UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROBERT FERNANDEZ,                    )
                                     )
            Plaintiff,               )
                                     )
v.                                   )          Case No. 19-cv-01638
                                     )
ST. LOUIS COUNTY, MISSOURI,          )
                                     )
            Defendant.               )

**Plaintiff's Memorandum in Support of his Motion for Preliminary Injunction**

Plaintiff Robert Fernandez, by counsel, states for his Suggestions in Support of his Motion for Preliminary Injunction:

I.    **Introduction**

Plaintiff Robert Fernandez is a poor, homeless, single man who resides within the limits of Defendant St. Louis County, Missouri. He lacks a permanent residence and fixed address. He begs for financial assistance—that is, cash money—on the sidewalks or medians of County roadways to pay for the basic essentials of life. *See* Affidavit of Robert Fernandez (Ex. 37) at 2. Since October 2017, Fernandez has been issued a citation by the County Police some 21 times for solicitation with a Solicitor license in violation of St. Louis County Code Section 804.050. *Id.* at 5. During this time period, he has also been cited eight times for vagrancy pursuant to Sections 716.080 and 716.090, and ten times for soliciting contributions in the roadway pursuant to Section 1209.090. *Id.*

After Fernandez retained counsel, the County Counselor entered *nolle prosequi* on 38 pending citations on May 9, 2019. *Id.* at 6. That same day, Fernandez was cited again for the 39th time by the County police. *Id.* The citation was his 21st for solicitation without a Solicitor license,

despite Fernandez possessing and producing a valid Solicitor license on at least eight occasions. *Id.* at 5.   Fernandez has already been arrested approximately three times for soliciting without a Solicitor license, booked and released from a County police station.  *Id.* at 6.  Fernandez infers the purpose of the County citations and prosecutions is to harass him and prevent a homeless person such as him from begging on County sidewalks or medians near intersections.  *Id.* at 7.

Fernandez now moves the Court, pursuant to Count I of his Complaint and under F. R. Civ. P. 65, to preliminarily enjoin Defendant St. Louis County, Missouri from enforcing the provisions of County Code Chapter 804 related to solicitors.  Those provisions on their face unconstitutionally violate Plaintiff's First Amendment right to free speech and expressive conduct—namely, begging by a homeless person in a public place—as well as the First Amendment rights of dissimilar third parties such as nonprofit representatives, day laborers, and out-of-state visitors to engage in forms of protected speech and conduct.

The Solicitor licensing process is unreasonable as applied to poor homeless persons such as Fernandez in requiring the licensee to have a residence and a permanent address, to pay several fees, to disclose personal information and undergo a background check, and to apply for authorization to solicit at certain intersections—while only allowing such solicitation for up to three days per calendar year.  St. Louis County has enforced this law—even against a homeless person begging with a valid Solicitor permit—with the discriminatory goal of ridding a disliked form of speech and speaker from the County's public spaces.  It is striking that Fernandez has been cited eight times even when he possessed a valid Solicitor license.

Since the Code restricts solicitations for certain kinds of financial assistance but not others, on the basis of the content of the solicitation, then it is a content-based regulation and cannot survive strict scrutiny by this Court.  The fact that solicitors speaking for benefit of churches,

fraternal orders, and politicians do not require a license and can speak anytime at designated intersections undermines any purported government interest the County has in otherwise imposing a prior restraint on speech and expressive conduct in a traditional public forum.  This Court can enjoin enforcement of Chapter 804 as applied to solicitors—not just homeless beggars such as Fernandez, but also other dissimilar speakers such as day laborers, nonprofit charity representatives, and nonresident visitors who wish to solicit during a brief visit to the County.

Plaintiff further moves the Court pursuant to Count II of his Complaint to enjoin enforcement of the County from enforcing the prohibition of solicitation by pedestrians in the roadway contained at Code Section 1209.090 both as to Fernandez and as to third parties encompassed by the prohibition to whom the prohibition acts as an unconstitutional restraint on protected speech and expressive conduct.  The prohibition only relates to speech soliciting a ride, employment, charitable contribution or business from the occupant of any vehicle, but not any subject of other speech.  Many forms of speech and expressive conduct by pedestrians are otherwise permitted.  An officer can only enforce this section of the Code by examining the content of the speech.  As briefed below, Section 1209.090 is no longer good law despite the Eighth Circuit holding otherwise in 1991, because of intervening Supreme Court guidance.

Plaintiff further moves the Court pursuant to Count III of his Complaint to enjoin enforcement of the County's vagrancy prohibitions at Sections 716.080 and 716.090 as such vagrancy prohibitions are presumptively violative of the Fourteenth Amendment[1] in that they lack due process because they are void for vagueness, lack reasonable notice of what conduct violates

---

[1] *City of St. Louis v. Burton,* 478 S.W.2d 320 (Mo. 1972); *see also Klingler v. United States,* 409 F.2d 299, 305 n.4 (8th Cir. 1969) ("An arrest for vagrancy cannot be justified by a record as devoid of evidentiary support as in this case."); *Ricks v. District of Columbia,* 414 F.2d 1097 (D.C. Cir. 1968).

the Code, invite arbitrary and capricious enforcement, and constitute a status offense by criminalizing the status of homelessness.  Further, the vagrancy prohibitions violate on their face the equal protection clause in applying only to men, to the able bodied, and to the poor.

Plaintiff further moves for his reasonable attorney's fees and costs under 42 U.S.C. § 1988, and for such other relief as may be just, meet and reasonable.

## II.  The Record for this Motion for Preliminary Injunction

Fernandez suggests that an evidentiary hearing may assist the Court, and he asserts that he can appear and testify in support of his motion.  Particularly, Fernandez refers the Court to the process that Judge E. Richard Webber followed in reviewing enforcement actions against homeless persons in the City of St. Louis.  *Johnson v. Board of Police Com'rs,* 351 F. Supp. 2d 929 (E.D. Mo. 2004).  Judge Webber declined to issue a temporary restraining order, but he did hold a preliminary injunction hearing at which plaintiffs testified, and he did grant the homeless plaintiffs some meaningful relief.  Although the *Johnson* case did not involve a preliminary injunction based on First Amendment claims (but did involve a preliminary injunction based on Fourth, Fifth, and Fourteenth Amendment claims), Fernandez suggests that there are substantial similarities because both involve homeless persons being harassed by the police, and that, for the reasons briefed below, the free speech aspect of his claims only make his allegations stronger than those in *Johnson.*  Admittedly, in *Johnson* there were thirteen plaintiffs, not one as here.  But unlike in *Johnson,* Fernandez is not seeking a temporary restraining order (denied in that case).  Fernandez is seeking an injunction based on an established pattern of citations targeting his begging in a traditional public forum.

The exhibits that support the record at the time of the filing of this motion are attached to the Complaint, and incorporated therein by reference.

### III.    Standing of Plaintiff Robert Fernandez

Standing is a prerequisite to declaratory and injunctive relief. To have standing under Article III, a plaintiff must have suffered an "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted.) There also must be a causal connection between the injury and the defendant's conduct, and the injury must be redressable by a favorable decision. *Id*. at 561.  The Eighth Circuit has found standing to challenge a statute or an ordinance is present when the challenger has experienced a direct injury or will soon sustain a direct injury redressable by the court.  *Harmon v. Kansas City*, 197 F.3d 321 (8th Cir. 1999). It is not necessary that [the Plaintiff] first expose himself … to actual arrest or prosecution to challenge a statute that he … claims deters the exercise of his … constitutional rights.  *Id.* at 326 (internal citations omitted).  "A plaintiff need only establish that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of [a law preventing or restricting it.]. Self-censorship can itself constitute injury in fact." *281 Care Committee v. Arneson*, 766 F.3d 774, 780-82 (8th Cir. 2014).

Fernandez meets the *Lujan* and *Harmon* tests. Fernandez has a concrete stake in the outcome of this action as he has been cited by the St. Louis County Police and prosecuted by the St. Louis County Counselor twenty-one times under Code Chapter 804's solicitation regulations (despite having a valid Solicitor license in at least eight of those cases), ten times under Code Section 1209.090's prohibition of pedestrian soliciting contributions, employment or business from vehicles, and eight times under Code Sections 716.080 and 716.090 for vagrancy.  Since he was cited for the 39th time on the same day that the County Counselor's Office entered *nolle prosequi* on the first 38 citations, Fernandez has a reasonable future expectation that such citations

5

and prosecutions will continue in connection with his continued begging for financial assistance as a poor homeless person (whether or not has he has a valid Solicitor license). Finally, the validity of the ordinances at issue—both as applied and facially—is a ripe and justiciable question.  *See, e.g., Gray v. City of Valley Park*, 567 F.3d 976, 985 (8th Cir. 2009); *Public Water Supply Dist. v. City of Peculiar,* 345 F.3d 570 (8th Cir. 2003).

Fernandez thus has standing to bring an as applied challenge to each of Chapter 804, Section 1209.090, and Sections 716.080 and 716.090 because Fernandez meets the four-party *Dataphase* test applied in the Eighth Circuit.  *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

Fernandez also has standing to bring a facial challenge to each of the three challenged sections of the Code, because Fernandez can reasonably show that each treats other third parties in a manner different than Fernandez.  *Schaumburg v. Citizens for Better Environ,* 444 U.S. 620, 534 (1980) ("Litigants … may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court.").  To find a statute substantially overbroad, the Court must find a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court."  *New York State Club Ass'n, Inc. v. City of New York,* 487 U.S. 1, 11 (1988) (quoting *Members of the City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798 (1983)).

## V.    Jurisdiction and *Younger* Abstention

Federal Rule of Civil Procedure 65, which details the procedure for preliminary injunctive relief, does not confer jurisdiction. A request for injunctive relief must have an independent basis for federal court jurisdiction. *See* 13 Moore's Federal Practice § 65.05 (3d ed. 2001). Under 28

U.S.C. § 1331, federal jurisdiction exists if the request for relief involves a question of federal constitutional or statutory law.

Fernandez's Complaint is brought pursuant to 42 U.S.C. § 1983. In this Motion for Preliminary Injunction, Fernandez asserts that the County has violated and continues to violate his First Amendment rights.  Specifically, Fernandez alleges that the County has a persistent custom of citing and prosecuting homeless persons such as himself even if they carry a valid Solicitor permit card.

Preliminary injunctive relief is available to "redress alleged civil rights violations in actions brought under 42 U.S.C. § 1983 and in other civil rights actions." 13 Moore's Federal Practice § 65.22[4] (citing *Gannon v. Action,* 303 F. Supp. 1240, 1247 (E.D. Mo. 1969), *aff'd in part* 450 F.2d 1227 (8th Cir. 1971), and *Central Presbyterian Church v. Black Liberation Front,* 303 F. Supp. 894, 901 (E.D. Mo. 1969)).

Fernandez anticipates that the County may argue that the *Younger* abstention doctrine mandates that this Court abstain from exercising jurisdiction over this action, since it would be improper for Fernandez to try his sole remaining County ordinance violation in federal court. Fernandez further anticipates that the County will argue that Fernandez has an adequate remedy at law with regard to his citations and that a complete legal remedy lies in the municipal court.

In *Younger v. Harris,* 401 U.S. 37 (1971), the Supreme Court held that, ordinarily, principles of federalism require that a federal court abstain from enjoining an ongoing state criminal prosecution. There are, however, three exceptions to the Younger abstention doctrine: (1) "the state proceeding is motivated by a desire to harass or is conducted in bad faith," *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 611 (1975); (2) "the challenged statute is 'flagrantly and patently violative of express constitutional prohibitions,'" *Moore v. Sims,* 442 U.S. 415, 424 (1979)

(quoting *Huffman,* 420 U.S. at 611); or, (3) there is "an extraordinarily pressing need for immediate federal equitable relief." *Kugler v. Helfant,* 421 U.S. 117, 125 (1975).  *See also Krahm v. Graham,* 461 F.2d 703 (9th Cir. 1972) (*Younger* abstention not warranted where each plaintiff endured 10 to 20 unsuccessful anti-obscenity prosecutions).

Abstention is proper when some circumstance in the case indicates that federal equitable relief is warranted due to a bad faith prosecution or harassment. *See Younger,* 401 U.S. at 54.  But, the state proceeding must afford the federal plaintiff the opportunity to raise his constitutional claims in state court, *see Middlesex Ethics Commission v. Garden State Bar Association,* 457 U.S. 423, 435-36 (1982), and abstention is not required if the plaintiff can demonstrate he will be irreparably harmed and that the threat to his federally-protected right is one incapable of being eliminated by a defense against the state criminal prosecution. *Younger,* 401 U.S. at 46.

While 38 of the County citations have been dismissed, and only one County citation remains being prosecuted, Fernandez is not asking the Court to enjoin that remaining proceeding. Yet as to those proceedings, Fernandez does note that the jurisdiction of municipal court is limited to municipal ordinance violations.  *Johnson,* 351 F. Supp. 2d at 933 n.1 ("[T]he municipal court could not order the declaratory and injunctive relief Plaintiffs seek in this action since its jurisdiction is limited to the enforcement of municipal ordinances."); *see particularly* Mo. Const. art. V, sec. 23 (1976); RSMo. § 479.020.1; Missouri Supreme Court Rule 37; *Frech v. City of Columbia,* 693 S.W.2d 813 (Mo. 1985) ("the jurisdiction of a municipal court is limited to hearing and determining violations of municipal ordinances.").

Fernandez is not asking this Court to determine his guilt or innocence with regard to the remaining ordinance violation.  Rather, this Court would only be considering such evidence to the

extent necessary to ascertain whether there have been constitutional violations warranting declaratory and injunctive relieve.

Fernandez does argue that the dismissal of 38 of the 39 citations creates an inference that County officials had no intention of following through on these prosecutions. *Ken-N.K., Inc. v. Vernon Township*, 18 F. App'x 319, 324-25 n.2 (6th Cir. 2001) (citing Erwin Chemerinsky, Federal Jurisdiction § 13.4, at 806-08 (3d ed. 1999), and that the prosecutions were undertaken without hope of obtaining valid convictions, or in the alternative, regardless of the outcome of the citations. *Lloyd v. Doherty*, No. 18-3552, 2018 WL 6584288, at *3–4 (6th Cir. Nov. 27, 2018); *McNatt v. Texas*, 37 F.3d 629 (5th Cir. 1994).  The repeated citations by the County of Fernandez, despite his possession of a valid Solicitor license, create an inference of bad faith prosecution or harassment warranting federal equitable relief.  *Younger,* 401 U.S. at 54; *Johnson v. Board of Police Com'rs,* 351 F. Supp. 2d 929, 932-34 (E.D. Mo. 2004).  On inference, the purpose of Fernandez's repeated citations and prosecutions is to deter him from engaging in the protected speech and the expressive conduct of begging.  A person of ordinary firmness would have an objectively reasonable fear under such circumstances that he would be cited and prosecuted again, even though that person possessed and produced a valid Solicitor license.

Even if the remaining County citation were also to be dismissed by the County Counselor's office, nevertheless Fernandez believes this court would retain jurisdiction under the mootness exception doctrine. *Roberts v. Norris,* 415 F.3d 816, 819 (8th Cir. 2005) ("The mootness exception applies if it is "reasonably foreseeable" that a particular issue will be likely to repeat and evade review.") (quoting *Richmond Newspapers v. Virginia,* 448 U.S. 555, 563 (1980)).  Given the record here of 39 citations since October 2017, and Fernandez's ongoing conduct, the likelihood of repetition is not speculative, but rather quite real.

9

In the alternative, Fernandez argues that there is bad faith and harassment under facially unconstitutional solicitation and vagrancy ordinances such that federal intervention is warranted. The purpose of Fernandez's repeated citations and prosecutions is to deter him from engaging in the protected speech and expressive conduct of begging.  Each of the solicitation regulations and prohibitions of Chapter 804 and Section 1209.090, and the vagrancy prohibitions of Sections 716.080 and 716.090, are flagrantly and patently violative of express constitutional prohibitions. *Moore,* 442 U.S. at 424.  Fernandez reasonably fears further citation and prosecution despite carrying a valid Solicitor permit.  Further, as discussed below, Fernandez can show irreparable harm to his First Amendment rights under the solicitation and vagrancy prohibitions.

This is not a case where the facts show that Fernandez has been convicted of constitutionally-valid offenses, or even the subject of constitutionally-valid Fourth Amendment seizures pursuant to a warrant.  *Cf.  Collins v. County of Kendall,* 807 F.2d 95, 99-101 (7th Cir. 1986).  Admittedly there has been no quashing of arrest warrants or high-profile publicity campaign against Fernandez, *cf. Dombrowski v. Pfister,* 380 U.S. 479 (1965*)* and *Krahm v. Graham,* 461 F.2d 703 (9th Cir. 1972), but such extreme and unusual facts are not necessary to deny *Younger* abstention, *Collins,* 807 F.2d at 101, and—most critically—38 of the 39 charges against Fernandez were not prosecuted to completion.  Also, Fernandez suggests that, given his valid Solicitor license, the County has no expectation of conviction in the pending 39th prosecution, but does want to discourage Fernandez's exercise of his free speech rights by begging. *Cameron v. Johnson,* 390 U.S. 611, 621 (1968).  Indeed, Fernandez believes that the County is targeting his begging *regardless of the outcome* of the prosecutions.  *Sheridan v. Garrison,* 415 F.2d 699, 706 (5th Cir. 1969), *cert. denied,* 396 U.S. 1040 (1970), a case which discusses the

abstention doctrine at 703 ("State officials are using or threatening to use prosecutions, *regardless of their outcome,* as instrumentalities for the suppression of speech." (emphasis in original)).

Finally, Fernandez asserts that the solicitation regulations and prohibitions of Chapter 804, the solicitation prohibitions in Section 1209.090, and the vagrancy prohibitions of Sections 716.080 and 716.090, each flagrantly violates express constitutional prohibitions in light of evolving Supreme Court guidance. *Moore v. Sims,* 442 U.S. 415, 424 (1979).

Fernandez raises cognizable constitutional claims and that the *Younger* doctrine does not prevent the Court from hearing these claims. Thus, federal subject matter jurisdiction exists to consider this motion. *See generally Johnson,* 351 F. Supp. at 932-34.

## VI.    The Preliminary Injunction Standard

In determining whether or not Fernandez is entitled to a preliminary injunction, the relevant factors are: "(1) the probability of success on the merits; (2) the threat of irreparable injury to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of the an injunction is in the public interest." *Dataphase Sys., Inc.,* 640 F.2d. at 114.

If Fernandez can establish a sufficient likelihood of success of the merits of his First Amendment claims, he will also have established irreparable harm. "'When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied.'" *Minnesota Citizens Concerned for Life, Inc. v. Swanson,* 692 F.3d 864, 870 (8th Cir. 2012) (quoting *Phelps-Roper v. Troutman,* 662 F.3d 485, 488 (8th Cir. 2011) (per curiam)).   It is well-settled law that a "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality).

The balance of the equities, too, generally favors constitutionally-protected freedom of expression, *Phelps-Roper v. Nixon,* 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Ropert v. City of Manchester, Mo.,* 697 F.3d 678 (8th Cir. 2012), and it is always in the public interest to protect constitutional rights. *Id.; see also Connection Distrib. Co. v. Reno,* 154 F.3d 281, 288 (6th Cir. 1998) (quotations omitted); *Kirkeby v. Furness,* 52 F.3d 772, 774 (8th Cir. 1995) (reversing district court's denial of a motion for preliminary injunction to enjoin City of Fargo from enforcing an anti-picketing ordinance).

## VII.   Fernandez is Likely to Succeed on the Merits

At the preliminary injunction phase of the proceedings, the Court's role is not to ultimately determine the constitutionality of the County's regulations on solicitation, its prohibition of certain types of roadway solicitation, and its prohibition of vagrancy, but rather the likelihood of Fernandez as Plaintiff prevailing on his challenge. *Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d 367, 371 (8th Cir. 1991) (in considering the likelihood of the movant prevailing on the merits, a court does not decide whether the movant will ultimately win).

Since Fernandez is challenging the constitutionality of the County ordinances that comprise each of Chapter 804, Section 1209.090, and Section 716.080 and 716.090 of the Code, then he must demonstrate that he is likely "to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds,* 520 F.3d 725, 732 (8th Cir. 2008). Under *Dataphase* and *Rounds,* Fernandez can show that he is likely to succeed on the merits.

"The Free Speech Clause of the First Amendment provides that 'Congress shall make no law ... abridging the freedom of speech....'" *Neighborhood Enterprises, Inc. v. City of St. Louis,* 644 F.3d 728, 736 (8th Cir. 2011) (quoting First Amendment, U.S. Const.). The First Amendment applies to the states through the Fourteenth Amendment's due process clause. *See Gitlow v. New*

*York,* 268 U.S. 652, 666 (1925). In the First Amendment context, "a law may be invalidated as overbroad if a 'substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens,* 130 S. Ct. 1577, 1587 (2010) (quoting *Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449, n.6 (2008)).

An overbroad statute may be challenged on its face even though a more narrowly drawn statute would be valid as applied to the party in the case before it. *City Council of L.A. v. Taxpayers for Vincent,* 466 U.S. 789, 798 (1984)("[B]roadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected."). A law restricting expressive activity is overbroad where it is "written so broadly that [it] may inhibit the constitutionally protected speech of third parties." *Taxpayers for Vincent,* 466 U.S. at 798. The overbreadth doctrine is one "under which a person may challenge a statute that infringes protected speech even if the statute constitutionally might be applied to him." *Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 462, n. 20 (1978). Courts have "provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." *Virginia v. Hicks,* 539 U.S. 113, 119 (2003).

A plaintiff challenging a content-based restriction on speech is presumptively entitled to a preliminary injunction. *Ashcroft v. American Civil Liberties Union,* 542 U.S. 656, 671 (2004). A plaintiff challenging a content-based restriction is "deemed likely to prevail" and entitled to a preliminary injunction unless the government offers proof that there is no less restrictive alternative that will fulfill any asserted compelling interest in the restriction. *Id.* at 666. The government's burden to justify a content-based restriction on First Amendment speech is heavy,

and "entirely on the Government," which can succeed only if it can prove that the restriction meets strict scrutiny. "[I]t is the rare case in which . . . a law survives strict scrutiny." *Whitton v. City of Gladstone,* 54 F.3d 1400, 1407 (8th Cir. 1995), quoting *Burson v. Freeman,* 504 U.S. 191, 211 (1992). "Asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling." *Whitton,* 54 F.3d at 1407. The Supreme Court has held that the strict scrutiny test is so difficult to overcome that a law is effectively illegal *per se* if the court finds it to be content based. *United States v. Playboy Ent,'t Grp.,* 529 U.S. 803, 818 (2000).

Fernandez is likely to prevail on the merits of his claims that Chapter 804's regulation of solicitors, Section 1209.09's prohibition of certain types of roadway solicitation, and Section 416.080 and 416.090's prohibitions of vagrancy are facially overbroad. Determining whether a law is substantially overbroad requires a two-step analysis. First, a court must "construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams,* 553 U.S. 285, 293 (2008). Second, based on the first step, a court must determine whether the law "criminalizes a substantial amount of protected expressive activity." *Id.* at 297.

### a. Begging and panhandling are constitutionally-protected forms of speech and expressive conduct

The Supreme Court has long protected speech in the form of soliciting money. *Schaumburg,* 444 U.S. 620; *New York Times Co. v. Sullivan,* 367 U.S. 254 (1964); *Bates v. State Bar of Arizona,* 433 U.S. 350, 363 (1977). In *Schaumburg,* the Supreme Court held unconstitutional a city ordinance which prohibited both door-to-door and public street solicitations without a permit, reasoning that charitable solicitations include a variety of speech interests protected by the First Amendment. 444 U.S. at 833. Such interests include the communication of

14

information, the dissemination and propagation of views and ideas, and the advocacy of causes. *Id.*

The Supreme Court has repeatedly held that the public streets are a "quintessential public forum for expressive activity." *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983). In 2011, the Supreme Court remarked, "[W]e have repeatedly referred to public streets as the archetype of a traditional public forum," noting that "'[t]ime out of mind' public streets and sidewalks have been used for public assembly and debate." *Snyder v. Phelps,* 131 S. Ct. 1207, 1218 (2011) (quoting *Frisby v. Schultz,* 487 U.S. 474, 480 (1988)). Here, Fernandez begs from a traffic median near a busy intersection.

Begging, like charitable solicitations, involves substantial speech interests and is thus protected by the First Amendment. *See Speet v. Schuette,* 726 F.3d 867 (6th Cir. 2013) (holding Michigan's anti-begging statute an unconstitutional violation of the First Amendment); *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 553 (4th Cir. 2012) ("the speech and expressive conduct that comprise begging merit First Amendment protection"); *Gresham v. Peterson,* 225 F.3d 899, 904 (7th Cir. 2000) ("the Court's analysis in *Schaumburg* suggests little reason to distinguish between beggars and charities in terms of the First Amendment's protection of their speech); *Smith v. City of Fort Lauderdale,* 177 F.3d 954, 956 (11th Cir. 1999) (holding that begging is speech entitled to First Amendment protection); *Loper v. New York City Police Dep't,* 999 F.2d 699, 704 (2d Cir. 1993) (finding that the distinction between begging and charitable solicitations "is not a significant one for First Amendment purposes"); *Redondo Beach v. City of Redondo Beach,* 657 F.3d 936, 945 (9th Cir. 2011) (striking down an ordinance that disallowed requesting money from motor vehicles because such solicitation "constitutes protected expression under the First Amendment"); *ACLU of Nevada v. City of Las Vegas*, 466 F.3d 784,

792 (9th Cir. 2006) (ordinance prohibiting begging violated First Amendment because "solicitation is a form of expression entitled to the same constitutional protections as traditional speech); *see also Norton v. City of Springfield, Ill.,* 806 F.3d 411 (7th Cir. 2015); *Thayer v. City of Worcester,* 144 F. Supp. 3d 218 (D. Mass. 2015), *preliminary injunction entered upon G/V/R,* 135 S.Ct. 2218.

Courts have found no real distinction between the type of speech involved in charitable solicitations and that involved in begging, the former being for benefit of others and the latter being for benefit of self.  *Loper,* 999 F.2d at 704 ("We see little difference between those who solicit for organized charities and those who solicit for themselves in regard to the message conveyed."). "Begging is indistinguishable from charitable solicitation for First Amendment purposes [and to] hold otherwise would mean that an individual's plight is worthy of less protection in the eyes of the law than the interests addressed by an organized group." *Speet,* 626 F.3d at 867.  Though not all begging conveys the various protected speech interests enumerated in *Schamburg*—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—it usually does involve *some* communication of that nature.  *Schaumburg,* 444 U.S. at 833; *Loper,* 999 F.3d at 704 (emphasis added).

The very nature of begging communicates inherently important messages related to the individual's need for food, shelter, transportation, unemployment, homelessness, illness and socio-economic disability.  *See Gresham v. Peterson,* 225 F.3d at 905; *Loper,* 999 F.2d at 704.  Even absent particularized speech, the image and expressive conduct of a homeless person conveys messages of need for support and assistance.  *Id.*  "While some communities might wish all solicitors, beggars and advocates of various causes be vanished from the streets, the First Amendment guarantees their right to be there, deliver their pitch, and ask for support." *Gresham,*

16

225 F.3d at 905.  If there was any doubt after *Schaumburg* that the First Amendment protects begging just as much as charitable solicitation, the Supreme Court laid that doubt to rest when it remanded *Thayer,* a panhandling case, to the First Circuit in the wake of *Reed.*

In *Reed v. Town of Gilbert, Ariz.,* 135 S.Ct. 2218 (2015), a sign regulation case, the Supreme Court clarified the distinction between content-based and content-neutral restrictions on speech, holding that a restriction is content based if it draws *any* facial distinction based on the message of the speaker.  Unquestionably, a restriction on solicitation—speech and expressive conduct in asking for financial assistance—is content based.  In *Thayer v. City of Worcester,* the First Circuit originally held that a city ordinance banning aggressive panhandling was not content-based, and was rather a time, place and manner restriction under intermediate scrutiny.  755 F.3d 60 (1st Cir. 2014).  The Supreme Court, however, granted certiorari, vacated, and remanded (a process sometimes called "*G/V/R*") the *Thayer* decision, 135 S.Ct. 2887, instructing the First Circuit to further consider *Reed.*  Upon remand from the First Circuit, the district court held that "*Reed* mandates a finding that [the ordinance] is content-based because it targets anyone seeking to engage in a specific type of speech, i.e., solicitation of donations."  *Thayer v. City of Worcester,* 144 F. Supp. 3d 218, n. 2 (D. Mass. 2015).  The district court then analyzed the ordinance under strict scrutiny and held that it was not narrowly tailored to achieve compelling state interests.  *Id.*

The Sixth Circuit reversed itself in light of the Supreme Court's holding in *Reed* to find that a solicitation ordinance was content based.  *Norton v. City of Springfield,* 806 F.3d 411 (7th Cir. 2015) ("*Norton* II") (on rehearing); *see also* its District Court progeny Case No. 3:15-cv-03276, ECF # 14 (C.D. Ill. Sept. 23, 2015).  In *Norton* II, the 7th Circuit reversed its prior ruling that a panhandling ordinance which defined panhandling as an oral request for an immediate

donation of money was not content based. *Otterson v. City of Springfield,* 768 F.3d 713, 714 (7th Cir. 2014) ("*Norton* I)".

A district court within the Eighth Circuit reaching a similar finding in April 2019.  *Rodgers v. Stachey,* Case No. 6:17-cv-06054 (W.D. Ark. Apr. 1, 2019) (invalidating Hot Springs, Arkansas ordinance banning solicitation of money or any item from vehicle occupants).  It is striking that almost every circuit and district court throughout the Nation that has in recent years examined an anti-solicitation or anti-begging ordinance, whether before or after *Reed,* has found it to run afoul of the First Amendment.[2]

To the extent that the County may rely on *Int'l Soc. for Krishna Consciousness, Inc. v. Lee* as still good law after *Reed*, Fernandez suggests that it is not.  *Lee* held that a ban on in-hand donations was not a content-based regulation of speech because it was "directed only at the physical exchange of money."  505 U.S. 672, 705 (1992) (Kennedy, J., concurring).  But, the issue in the content-based analysis is not whether the statute imposes a partial or complete ban on

---

[2] *See, e.g., Comite De Jornaleros De Redondo Beach v. City of Redondo Beach,* 657 F.3d 936 (9th Cir. 2011) (en banc); *Reynolds v. Middleton,* 779 F.3d 222, 232 (4th Cir. 2015); *Speet v. Schuette,* 726 F.3d 867 (6th Cir. 2013); *Clatterbuck v. City of Charlottesville, Va.,* 708 F.3d 549 (4th Cir. 2013); *Citizens Actions Coalition of Indiana v. Town of Yorktown, Indiana,* Case No. 1:13-cv-422-RLY-DKl (S.D. In. Sept. 30, 2014); *McLaughlin v. City of Lowell, Mass.,* 140 F.Supp.3d 1276 (D.Mass. Oct. 23, 2015) (("It appears at this point clear that regulations of solicitation which single out the solicitation of the immediate transfer of funds for charitable purposes are content-based."); *Browne v. City of Grand Junction, Co.,* 136 F.Supp.3 1276 (D.Colo. Sept. 30, 2015) ((observing that any law prohibiting all solicitation speech in a public forum constitutes content discrimination under *Reed*);; *American Civil Liberties Union of Idaho v. City of Boise, Idaho,* 998 F.Supp.2d 908 917 (D. Idaho 2014); *Guy v. County of Hawaii,* 2014 WL 4702289 at *5 (D. Hawaii Sept. 19, 2014); *Kelly v. City of Parkersburg,* 978 F.Supp.2d 624, 631 (S.D. W.Va. 2013); *see also Planet Aid v. City of St. Johns,* 782 F.3d 318, 328 (6th Cir. 2015); *Cutting v. City of Portland, Me.,* 802 F.3d 79 (1st Cir 2015).

conduct but whether on its face it "defin[es] regulated speech by particular subject matter." *Reed,* 135 S. Ct. at 2227.

Even pre-*Reed* law chips away at such reasoning that improperly defines content-based prohibitions to be neutral bans on expressive conduct.  The Sixth Circuit, evaluating a panhandling statute, criticized and refused to follow Justice Kennedy's analysis, in part because the reasoning did not command a majority of the Court, but mainly because it was contrary to *Schaumburg*. *Speet v. Schuette,* 726 F.3d 867, 877 (6th Cir.  2013) citing *Schaumburg,* 444 U.S. at 632.  And the two Circuits that did recently follow Justice Kennedy's analysis, the First Circuit in *Thayer* and the Seventh Circuit in *Norton I* [Otterman][3], were reversed in light of *Reed,* by the Supreme Court and a Sixth Circuit panel respectively.  *See* discussion, *above,* at pp. 16-17.  Any regulation of speech that is defined by particular subject matter is content-based and thus subject to strict scrutiny. 135 S. Ct. at 2227.

A person of ordinary firmness would have an objectively reasonable fear under such circumstances that he will be cited and prosecuted again for violating Chapter 804, even with possessing and producing a valid solicitor license.  *Bennett v. Hendrix,* 423 F.3d 1247, 1254 (11th Cir. 2005) (surveying cases from all circuits, including the Eighth Circuit, to find that objective test for chilling is the norm); *see also Garcia v. City of Trenton,* 348 F.3d 726, 728 (8th Cir. 2003) ("The ordinary-firmness test is well established in the case law. . . .").

In the alternative, the requirement that Fernandez obtain a Solicitor license every six months to beg for money in a public place significantly burdens Fernandez's speech and expressive conduct in begging for financial assistance.

---

[3] *Thayer* I*.,* 755 F.3d 60, 67-71 (1st Cir. 2014); Norton I [Otterson], 768 F.3d at 713, 714.

Fernandez suggests that Section 1209.090 is also constitutionally infirm under strict scrutiny because the state of First Amendment law has changed since Section 1209.090 was upheld under a narrow tailoring analysis by the Eighth Circuit in 1991 and a judge of this Court in 1989. *ACORN v. St. Louis County*, 930 F.2d 591 (8th Cir. 1991), *affirming* 726 F. Supp. 747 (E.D. Mo. 1989) (Limbaugh, J.); *see also Traditionalist Am. Knights of the Ku Klux Klan v. City of Desloge,* 775 F.3d 969, 972 (8th Cir. 2015) (somewhat similar City ordinance prohibiting "stand[ing] in or enter [ing] upon a roadway for the purpose of soliciting rides, employment, business or charitable contributions from, or distribut[ing] anything to, the occupant of any vehicle" upheld by split panel as content-neutral and narrowly tailored); *but see id.* at 979 (Loken, J. dissenting: "[*Johnson v. Minneapolis Park & Rec. Bd.,* 729 F.3d 1094, 1098 (8th Cir. 2013)] is instructive insofar as it analyzes an assumedly content neutral ban on distribution that silenced an unpopular speaker in a traditional public forum.").

The ordinances in *ACORN v. St. Louis* County and *KKK* were analyzed under intermediate rather than strict scrutiny as to the public interests of traffic safety.  Fernandez respectfully suggests that the Eighth Circuit, the district court and the parties to *ACORN* and *KKK* erred in agreeing and holding that Section 1209.090 is content neutral, because it only applies to certain subjects of speech.  After all, an officer enforcing Section 1209.090 must necessarily examine the content of the speech to determine whether or not the speaker is standing afoul of the prohibition.

To the extent that *ACORN* and *KKK* conflict with the Supreme Court's holding in *Reed* because the regulation cannot be enforced without looking to the *content* of the speech (e.g., charitable solicitation) rather than the *act of standing in the roadway,* then *ACORN* and *KKK* are no longer good law.  *Thayer,* 144 F. Supp. 3d 218.

Section 1209.090 does not prohibit a person from standing in the roadway to protest the President of the United States, to invite passers-by to find Jesus, to promote a Shakespeare festival, to encourage enrollment in a charter school, to solicit navigation directions from a motorist, to pick up a motorist's dropped glove and return it to its owner—indeed speech or expressive conduct on any manner of subjects that does not involve "soliciting a ride, employment, charitable contribution or business from the occupant of any vehicle."

The district court in *ACORN* expressly noted that its 1989-era conclusion was "based upon the current state of First Amendment analysis." 726 F. Supp. at 754. Fernandez suggests that the state of First Amendment analysis has changed since the Eighth Circuit affirmed that district court in 1991. It is not just *Reed* and its progeny *Thayer*. Even some pre-*Reed* cases conflict with *ACORN*. *See ACLU of Nevada v. City of Las Vegas,* 466 F.3d 784 (9th Cir. 2006) ("Although courts have held that bans on the *act* of solicitation are content-neutral, we have not found any case holding that a regulation that separates out *words* of solicitation for differential treatment is content-neutral") (emphasis in original); *Lopez v. Town of Cave Creek, Arizona,* 559 F. Supp. 2d 1030, 1032-33 (D. Ariz. 2008) (the Ordinance differentiates based on the content of speech on its face. It prohibits solicitation speech, but not political, religious, artistic, or other categories of speech. It also prohibits solicitation on the topics of employment, business or contributions, while allowing solicitation of votes or ballot signatures. And, in order to enforce the regulation, an official must necessarily examine the content of the message that is conveyed.") (internal citations omitted).

Fernandez suggests that this Court revisit the Eighth Circuit's opinion in *ACORN* in light of the Supreme Court's controlling holding in *Reed*, and other persuasive case law across the Nation as to similar impermissibly content-based prohibitions of solicitation in the roadway.

In the alternative, under a content-neutral analysis, Fernandez invites this Court to reconsider *ACORN* in light of case law developed since 1991, and to find that Section 1209.090 is not narrowly tailored to the County's interest in traffic safety, and that are myriad of less restrictive means for the County to promote traffic safety, such as the enforcement of other existing traffic and parking laws.  *McCullen v. Coakley* is clear that even in the more deferential content-neutral context the government must show that if existing laws are inadequate to protect its interest, the government must consider not only laws already on the books but also laws used in other jurisdictions, and new laws that the government could develop and enact before enacting a regulation that burdens protected speech. 134 S. Ct. at 2539. Moreover, even in the content neutral context the government must show that "that it considered different methods that other jurisdictions have found effective." *Id.*  The generally accepted way of dealing with unlawful conduct that may be intertwined with First Amendment activity is to punish it after it occurs rather than to prevent the First Amendment activity from occurring in order to obviate the possible unlawful conduct.

Fernandez concedes, as he must, that it may be unsafe for a pedestrian to stand in certain roadways.  But the County cannot prohibit such an act by only targeting certain speakers based on the content of their speech.  Thus a blanket prohibition on standing in the roadway may  pass First Amendment analysis under a content-neutral safety analysis, but not a partial ban that depends on the content of the speech and exempts broad categories of speakers.

Further, *KKK* and *ACORN* are distinguishable as Fernandez begs from the sidewalk or median, not in the roadway.  Thus Fernandez does not "stand" in the roadway.  "Stand" is not

defined by Section 1209.090 or elsewhere in the Code in the context of pedestrians[4], but it is defined in part as "to take up or maintain a specified position or posture" by the Merriam-Webster Dictionary[5].  Fernandez "takes up or maintains" his "specific position or posture" on the sidewalk or median, not in the roadway, and retrieves money from the drivers of vehicles stopped at the red light.  The word "roadway" is defined in Section 1202.010.28 as "That portion of a road intended for use by the general traveling public, typically delineated by curbs, edge lines, or the edge of pavement."  The word "median" is not defined by the Traffic Code in Title XII.  The word "sidewalk" is defined in Section 1202.010.31 as "A paved area separate from the highway or roadway intended for use by pedestrians."  Thus Fernandez suggests that by standing on the sidewalk or median—that is, the area separated from the roadway by a raised curb and a bright yellow line, as shown in photographs of him begging—that he is not standing in the roadway.

Notably, Fernandez does not distribute any items of any kind to anyone, and particularly not literature to drivers of stopped cars.

Fernandez's conduct thus appears to conform with what is permissible under the case law, even pre-*Reed*—case law.  In *ACORN v. St. Louis County,* the prohibited conduct involved active solicitation *and distribution of literature in the roadway* while the light was red.  The District Court summarized the ACORN solicitors' conduct as follows:

> Solicitors for ACORN station themselves on a median, sidewalk or shoulder of the road, and wait until the light is red. They step into the roadway when the light turns red. Carrying a cannister, the solicitors approach the occupants of motor vehicles detained at the intersection, identify ACORN, briefly mention one of the organization's goals, ask for a $1 contribution, and offer a slip of paper which

---

[4] The Code at Section 1202.010.32 does define "Stand" or "standing" as "The halting of a vehicle, whether occupied or not, other than for the purpose of receiving or discharging passengers."  Such a definition clearly cannot apply to the act by a *pedestrian* of "standing."

[5] *See* https://www.merriam-webster.com/dictionary/stand?utm_campaign=sd&utm_medium=serp&utm_source=jsonld

provides further information about ACORN. They then move to the next car in line. Frequently, one solicitor yells to the others when the cross-traffic light turns to amber indicating that their light will soon turn green so that the solicitors can retreat to a position of safety. Sometimes solicitors can tell on their own when the light turns green simply by driver behavior. Either way, when the light turns green, the solicitors retreat to the shoulder or median until the next red light.

*Acorn v. St. Louis County,* 726 F. Supp. at 749, *aff'd* 930 F.2d 591 (8th Cir. 1991)

The *KKK* District Court also found it was solicitation and *distribution of literature in the roadway* that was prohibited under the revised City of Desloge, Mo. ordinance:

The key portions of the August 2013 distribution ordinance stated:

1. No person shall stand in or enter upon a Roadway for the purpose of:

(i) soliciting rides from the occupant of any vehicle;

(ii) soliciting employment from the occupant of any vehicle;

(iii) soliciting business or sales of anything from the occupant of any vehicle; or

(iv) soliciting charitable contributions from the occupant of any vehicle.

2. No person shall stand in or enter upon a Roadway for the purpose of distributing anything to the occupant of any vehicle.

3. The Solicitation described in subparagraph 1 and the Distribution described in subparagraph 2[is] permissible to an occupant of a non-moving vehicle on the Roadway adjacent to the sidewalk and if the person doing so is on the adjacent sidewalk.

4. Nothing contained herein is intended to prohibit Solicitation or Distribution by any person on a sidewalk, to another person on the sidewalk, or by and among persons in a city parking lot or city park.

Memorandum and Order, *Trad. Am. Knights of the Ku Klux Klan,* No. 4:13-cv-00810-NAB at *3-4 n.1 [Doc #100, 2/23/16].[6]

---

[6] Judge Audrey G. Fleissig of this District Court enjoined an earlier revised version of the ordinance in previous litigation, *Trad. Am. Knights of the Ku Klux Klan v. City of Desloge, Mo.,* 914 F. Supp. 2d 1041, 1045, 1050 (E.D. Mo. 2012), which was reversed by a split panel of the

Upon remand from the Eighth Circuit, and with the intervening issuance by the Supreme Court of its decisions in *Reed* and *Thayer,* the KKK challenged only the distribution but not the solicitation provisions of the revised Desloge ordinance.   In ruling on dispositive motions, however, Magistrate Judge Nanette A. Baker of this district court declined to find that the revised KKK ordinance was constitutionally infirm as to *distribution of items by solicitors* because the revised ordinance permitted solicitation and distribution in sidewalks, parking lots and parks, including solicitation and distribution to occupants of non-moving vehicles on the roadway adjacent to the sidewalk if the solicitor is on the adjacent sidewalk.  *Id.*  Particularly, Judge Baker found that the "distribution provisions plainly apply to the exchange of any item without regard for communicative content. An officer enforcing the ordinance need not evaluate what is being distributed to determine whether a violation has occurred."  *Id.* at *9.

Fernandez is not challenging any distribution restrictions in St. Louis County.  Rather he is challenging, based on his ten citations, the content-based restriction in Section 1209.090 on solicitation in the roadway—*even though* his begging occurs not in the roadway but rather standing on the sidewalk or median, and targeting drivers of vehicles stopped at a red light.

Fernandez's conduct in begging from the sidewalk or median, without distribution of any items of any kind, is akin to the conduct approved of by the district court in *ACORN v. St. Louis County*:

> ACORN solicitors are still permitted to solicit funds from cars.  They are able to walk down the median and solicit funds from the drivers in the lane closest to the

─────────────

Eighth Circuit, 775 F.3d 969 (8th Cir. 2014), with Judge Loken dissenting.  That earlier, repealed ordinance provided:

> No person shall stand in or enter upon a roadway for the purpose of soliciting rides, employment, business or charitable contributions from, or distribute anything to, the occupant of any vehicle, except from the occupants of motor vehicles parked off the traveled portion of a roadway adjacent to a sidewalk if the solicitor is on a sidewalk.

median, and proceed from the car stopped first in line and work towards the back of the line, just as they would do if permitted into the street.

726 F. Supp. at 753.

*See also Traditionalist Am. Knights of the Ku Klux Klan v. City of Desloge*:

The ordinance permits pedestrians to distribute materials on sidewalks and on trails, in city parking lots and parks, and in front of the city hall and library. Camp testified that distribution of materials to vehicle occupants by persons standing outside of the roadway is still possible at some of the stop signs in Desloge.

775 F.3d 969, 976 (8th Cir. 2014).

Thus Fernandez's conduct, in the alternative, is consistent with the conduct approved of by the Eighth Circuit.

**b.      Chapter 804 and Section 1209.090's regulation of Solicitors each fail strict scrutiny because they are content-based restrictions not narrowly tailored to advance a compelling state interest.**

**i.      Each of Chapter 804 and Section 1209.090 is a content-based restriction on solicitation**

As the Supreme Court clarified in *Reed,* a law is a content-based restriction on speech if either of the following is true: (1) the text of the law makes distinctions based on the speech's subject matter … function of purpose," or (2) the purpose behind the law is driven by an objection to the content of the message.  135 S.Ct. at 2227.  *Reed* sets forth the order of analysis for the court to follow.  First, the court must determine whether or not the law is content-neutral on its face, and must hold that a law is content-based if it draws *any* facial distinctions based on the message that the speaker conveys.  *Id.*  Even if the law is content-neutral on its face, it may still be invalidated if it is determined that the government had a discriminatory motive in enacting it.  *Id.*  A law is also content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed."  *Id.* at 2229.

26

Chapter 804's regulation of solicitation is content-based under both *Reed* tests. It draws facial distinction based on the message the speaker conveys, namely, asking for financial assistance. *Id.* at 2227-28. A homeless person like Fernandez who asks for money cannot do so without a valid license; but if Fernandez asks passers-by for the time of day or directions then his speech is not subject to Chapter 804. The same restriction is true for a nonprofit canvasser asking for a donation, or a day laborer seeking a day's work in landscaping, or an out-of-state visitor seeking funds for an issue advocacy petition. If the message conveyed seeks financial assistance, only then is it forbidden. Chapter 804's regulation of solicitation is therefore content-based on its face under the *Reed* test because the text makes distinctions based on the speech's subject matter … function or purpose. *Id.* at 2227.

Like other classifications, regulatory distinctions among different kinds of speech may fall afoul of the Equal Protection Clause. *City of Ladue v. Gilleo,* 512 U.S. 43, 51 n.9 (1994) (citing *Carey v. Brown,* 447 U.S. 455, 459-471 (1980) (ordinance that forbade certain kinds of picketing but exempted labor picketing violated Clause); *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 98-102 (1972) (same)).

Similarly, Section 1209.090 targets only those persons who solicit a ride, employment, charitable contribution or business from the occupant of a vehicle. The regulation does not prohibit a person from entering the roadway to ask for directions; to pick up the motorist's dropped glove and return it to its owner; or to make statements or expressions related to political, religious, artistic, or other categories of speech. It also allows solicitation of votes or ballot signatures. In order to enforce the regulation, an official must necessarily examine the content of the message that is conveyed. *Forsyth County, Ga. v. Nationalist Movement,* 505 U.S. 123, 134 (1992).

Further, the regulation targets *the words* of solicitation—that is asking for a ride, a job, a donation, or business—but not the *act*.  Thus it is not content-neutral.

It is useful to compare the *Acorn* and *KKK* ordinances to determine whether or not each is content neutral.  The revised Desloge ordinance in *KKK* was similar to St. Louis County Section 1209.090, in that it focused on standing in the roadway to solicit rides, employment, business or sales of anything, or charitable contribution.  It also had a flat ban on standing in the roadway for the purpose of distributing anything to the occupant of any vehicle.  Rather than attacking the content-based analysis for the roadway speech prohibited by the revised Desloge ordinance, the *KKK* court focused on the flat ban on distributing anything.

In denying the KKK's arguments as to content-neutral distribution, Judge Baker correctly observed that if the KKK had targeted the content-based portion of the revised Desloge ordinance, then the KKK would likely have a colorable argument because of *Reed*.  Judge Baker wrote: "If the solicitation provisions of the City's ordinance were at issue, *Reed* would certainly constitute intervening authority.  However, the distribution provisions are distinguishable from the panhandling ordinances struck down in the wake of *Reed*."  Memorandum and Order, *Trad. Am. Knights of the Ku Klux Klan,* No. 4:13-cv-00810-NAB at *8 [Doc #100, 2/23/16].  Thus at least one judge of this District Court has already held that substantially similar provisions to Section 1209.090 are likely infirm in light of *Reed* as applied to homeless panhandling.

ii.     **Chapter 804 and Section 1209.090's regulations of solicitation are not narrowly tailored to advance a compelling government interest**

Chapter 804 and Section 1209.090's regulations of solicitation are not narrowly tailored to serve a compelling government interest.  A narrowly tailored regulation is one that actually advances the state's interest (is necessary), does not sweep too broadly (is not overinclusive),

does not leave significant influences bearing on the interest unregulated (is not underinclusive), and could be replaced by no other regulation that could advance the interest as well with less infringement of speech (is the least-restrictive alternative).  *Republican Party of Minnesota v. White*, 416 F.3d 738, 751 (8th Cir. 2005)

Even if the County were to argue that traffic safety or public disclosure interests are compelling, the argument would fail.  First, the Eighth Circuit has held that traffic safety, while significant, is not a compelling government interest.  *Neighborhood Enterprises,* 644 F.3d at 738 (quoting *Whitten*, 54 F.3d at 1408).  Even if it were, there is no sound legislative basis for permitting solicitation three days a year near certain intersections as provided for in Section 804.165.2 and Schedule I.  Nor is there a sound basis for allowing some speakers to enter the roadway to solicit, but not others.  Either the solicitation is inherently unsafe, or it is safe.  That the County permits some solicitation undercuts its rationale that solicitation is dangerous and must be limited in time at such places.  Further, if the County had certain compelling concerns about the manner of solicitation, it could address that through less restrictive measures.  The buffer in the sidewalk counseling regulation in *McCullen v. Coakley* was overbroad because it burdened petitioners' ability to reach the audience they sought to engage with, and it led them to be "far less successful" in their conversations." 134 S. Ct. at 2536-37. Since the *McCullen* petitioners sought to counsel rather than merely to protest they needed to be close enough to people to speak in a conversational tone.  *Id.*  The same is true here.  Begging is like "sidewalk counseling" because panhandlers have to be a normal conversational distance to converse with drivers stopped at the red light in a conversational tone unlike protesting where protestors can just holler out their message from a great distance. *Id.*  Begging needs to be near suburban drivers stopped at the red light in order to ask for cash, whether silently by holding a sign, or orally by asking for cash.

29

Second, disclosure cannot be the interest here, since the Missouri legislature already regulates campaign finance speech, RSMo. Chapter 130, as Chapter 408 recognizes in exempting such solicitations from regulation.  Section 804.250.  Third, the underinclusiveness of Section 804.250—by exempting representatives of churches and fraternal lodges, as well as politicians and their supporters—fatally undermines the alleged interest.  "The [government] has differentiat[ed] between speakers for reasons unrelated to the legitimate interests that prompted the regulation." *Neighborhood Enterprises,* 644 F.3d at 737 (quoting *Whitten,* 54 F.3d at 1406).  It makes no sense to say it is safe for, say, Baptists and Elks and County Councilmembers to solicit funds on the side of the road for benefit of their respective organization, but not a homeless person for benefit of himself.

Nor is the County likely to offer any substantive evidence that the chosen restriction of speech is "actually necessary" to achieve its interest.  *Brown v. Entertainment Merchants Assn.,* 564 U.S. 786, 799 (2011) ("The State must specifically identify an actual problem in need of solving, and the curtailment of free speech must be actually necessary to the solution. That is a demanding standard. It is rare that a regulation restricting speech because of its content will ever be permissible.") (internal citations and quotations omitted).

The County cannot show that these regulations of solicitation are actually necessary given the broad classes of exemptions they permit.  Fernandez anticipates, therefore, that the County cannot support its burden to show the regulation is necessary and narrowly tailored to further a compelling government interest.  Nor can the County show, Fernandez anticipates, that these regulations of solicitation are so narrowly tailored that they do not "burden substantially more speech than is necessary to further the government's legitimate interests."  *McCullen,* 134 S.Ct. 2518, 2535 (2014).

The County has the burden of providing substantial evidence that its regulations of solicitation speech does not restrict more speech than necessary, that there is evidence justifying the restrictions, and that it has tried other less restrictive ways to address the problem first. *Middleton v. Reynolds,* 779 F.3d 222, 231 (4th Cir. 2015) (enjoining ordinance banning homeless persons from standing on median to solicit money as not narrowly tailored to dangerous in-the-roadway transactions at busy intersections).   Even in the *ACORN v. St. Louis County* case, analyzing Section 1209.090 under a content-neutral analysis, the County then still allowed ACORN solicitors to distribute flyers (known as "tags") and to solicit money from cars, but just by remaining in the median and only entering the roadway to obtain cash from motorists.  726 F.Supp. at 753.

It is worth noting that the statute analyzed by the Fourth Circuit in *Middleton* was content neutral, and therefore analyzed under the less taxing intermediate scrutiny analysis of time, place and manner.  *Id.* at 229.  Even under intermediate scrutiny, however, the Fourth Circuit required the county defendant to demonstrate that the statute "materially advances an important or substantial interest by redressing past harms or preventing future ones."  *Id.* at 227.  Here there seems to reason to believe Section I intersections are safe for solicitation three days per year, but not the other 362.  Further, the County essentially concedes by the fact that countless intersections in the County are not listed on Schedule I that there are intersections which are safe for begging every day of the year.  *But see* "The fact that the coverage of a statute is broader than the specific concern that led to its enactment [may be] of no constitutional significance."  *Hill v. Colorado,* 530 U.S. 703, 730–31 (2000). What matters is whether the significant governmental interest addressed by the regulation is served, see *id.*, and "the validity of the regulation is judged by its

general effect, not whether enforcement in a particular case is necessary to protect" the asserted

interest, *ACORN v. St. Louis County,* 930 F.2d at 595.

> ### iii. Chapter 804 and Section 1209.090's regulation of solicitation in traditional public forums severely limits the County's ability to restrict speech and expressive conduct, regardless of the level of scrutiny

The locations of where Chapter 804 and Section 1209.090 regulate solicitation speech are

an additional reason why the County is severely circumscribed in its ability to restrict such speech

and expressive conduct.  The locations are streets, sidewalks and intersections, which all traditional

public forums, which "have immemorially been held in trust for the use of the public and, time out

of mind, have been used for purposes of assembly, communicating thoughts between citizens, and

discussing public questions."  *Hague v. Comm. For Indus. Org.,* 307 U.S. 496, 515 (1939); *see*

*also Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983); *Frisby v. Schultz,*

487 U.S. 474, 480 (1988); *Middleton,* 779 F.3d at 225.  The government's authority to regulate

speech within such places is particularly limited.  *See also Warren v. Fairfax County,* 196 F.3d

186, 196-97 (4th Cir. 1999) (citing *Central American Refugee Center-Carecen (N.Y.) v. City of*

*Glen Cove,* 753 F.Supp. 437, 443 (E.D.N.Y. 1990); *ISKCON of New Orleans, Inc. v. City of Baton*

*Rouge,* 668 F.Supp. 527, 530 n. 3 (M.D. La. 1987), *aff'd* 876 F.2d 494 (5th Cir. 1989); *Cnty Road*

*Comm'n,* 689 F.3d 506, 520-22 (6th Cir 2012).

Any permit and fee requirements constitute a prior restraint on speech, and as such, there

is a heavy presumption against their validity.  *Forsyth Cnty., Ga. v. Nationalist Movement,* 505

U.S. 123, 130 (1992); *see generally Riley v. National Federation of Blind,* 487 U.S. 781 (1988)

(invalidating North Carolina solicitor licensing statute).  Fernandez concedes, as he must, that the

Supreme Court has recognized substantial governmental interests in regulating competing uses of public forums, *Forsyth County,* 505 U.S. at 130; in regulating "streets to protect and insure the safety, comfort, or convenience of the public," *Murdoch v. Pennsylvania,* 319 U.S. 105, 116 (1943); and in collecting nominal fees to "defray the expenses of policing" the regulated activity, *id.* at 113-14.  The Ninth Circuit has also recognized as a substantial governmental interest the need to "provide notice to the municipality of the need for additional public safety and other services."  *Food Not Bombs, below,* 450 F.3d at 1042.  But the County has the burden of proving both narrow tailoring and ample alternatives for communication in defending its regulation.  *Clark v. Comty. For Creative Non-Violence,* 468 U.S. 288, 293 n.5. (1984).

The Supreme Court has identified two evils that will not be tolerated in prior restraints.  "First, a scheme that places 'unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.'" *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225-26 (1990) (internal citations omitted).  Second, a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible.  *Id.*  Here the County has too much discretion, and no time frame limitations within which the Division must issue the license.  *Id.* at 226. Nor is there an avenue for prompt judicial review.  *Id.* at 229.

It is critical that the forum be open to as many as possible.  That is, government cannot favor some users over others.  *Compare Heffron v. International Society For Krishna Consciousness, Inc.,* 452 U.S. 640 (1981) (upholding booth requirement for Hare Krishna proselytizers at Minnesota state fair since requirement applied equally to all similarly situated speakers) *with Iskcon of Potomac, Inc. v. Kennedy,* 61 F.3d 949, 956 (D.C. Cir. 1995) ("we conclude that, as here applied, the solicitation regulation [of the National Park Service on the Mall] burdens substantially more speech than necessary and violates the Free Speech Clause of the First

Amendment.").  Here, Chapter 804 favors speech by representatives of churches, fraternal lodges, and politicians governed by RSMo. Chapter 130, in that a Solicitor permit is not required.

This Court can also inquire—whether or not it does not apply strict scrutiny—as to whether there are obvious alternatives that would achieve the same objectives with less restriction of speech.  "An assessment of alternatives can still bear on the reasonableness of the tailoring." *Menotti v. City of Seattle,* 409 F.3d 1113, 1131 n. 31 (9th Cir. 2005); *see also City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 417 n. 13 (1993).  The County can maintain its interests in managing public streets and public order with measures less intrusive on First Amendment speech. *See Schaumburg,* 444 U.S. at 637 (ordinance banning solicitation in order to reduce trespassing and fraud was overbroad because those actions could be independently regulated).  It is arbitrary and capricious for the County to assert that it is safe and orderly for an individual to solicit at certain intersections three days a year but not the other 362 calendar days.

Regulations that do not foreclose an entire medium of expression, but merely shift the time, place, or manner of its use, must "leave open ample alternative channels for communication." *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293 (1984).  Fernandez's status and location of speech are each essential elements of his message.  Precisely because of their location, such signs provide information about the identity of the "speaker." As an early and eminent student of rhetoric observed, the identity of the speaker is an important component of many attempts to persuade.  *City of Ladue v. Gilleo*, 512 U.S. 43, 55-57 (1994).

The record and common experience also show there are not many alternative public forums in south County.  Photographs reveal that there are not sidewalks along nearby streets such as S. Lindbergh Blvd (Ex. 11).  The parking lots of shopping centers are private property, and are not

public forums.[7]  Thus medians and sidewalks near major intersections are the only viable channel for begging by a poor, homeless person.  *Douglas v. Brownell,* 88 F.3d 1551, 1532 (8th Cir. 1996) (quoting *Forsyth Cnty.,* 505 U.S. at 130, 112 S.Ct. 2395); *see also Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989); *but see Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks,* 864 F.3d 905, 913 (8th Cir. 2017).

Where, as here, the government is regulating expressive activity by means of a criminal sanction, it is the government that bears the burden of proving its actions pass constitutional muster.  *Perry Ed. Ass'n.,* 460 U.S. at 45-6. "[W]hen a regulation allegedly infringes on the exercise of first amendment rights, the statute's proponent bears the burden of establishing the statute's constitutionality." *ACORN v. City of Frontenac,* 714 F.2d 813, 817 (8th Cir. 1983); see *also Org. for a Better Austin v. Keefe,* 402 U.S. 415, 419 (1971) (proponent "carries a heavy burden of showing justification" for restriction); *Clark v. Community for Creative Non Violence,* 468 U.S. 288, 293 fn.5 (1984); *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.,* 452 U.S. 640, 658 (1981)n (Brennan, J., concurring). The burden is on the government to show that there is evidence supporting its proffered justification, including objective evidence showing that the restrictions serve the interests asserted.  *See Horina v. City of Granite City, Ill.,* 538 F.3d 624, 633 (7th Cir. 2008).

Although Fernandez is not a fraudster, *even if he were,* certainly the First Amendment permits false statements absent a legally cognizable harm. *United States v. Alvarez*, 567 U.S. 709

---

[7] Some states have held that private property open to the general public, such as shopping malls, are public forums for purposes of state constitutional free speech analysis. *See, e.g, Fashion Valley Mall v. N.L.R.B,* 42 Cal. 4th 850 (Cal. 2007).  The Supreme Court has never recognized privately-owned shopping malls to be public forums under the First Amendment.  *Lloyd Corp. v. Tanner,* 407 U.S. 551 (1972).

(2012) (invaliding statute criminalizing false claims to have been awarded the Congressional Medal of Honor for extraordinary courage under fire).

If the County's interest is public safety, there is nothing to support St. Louis County's determination of which intersections to include within Schedule I's time and place restrictions. Chapter 804 is silent on the manner of solicitation; Section 1209.090 simply restricts certain solicitations by pedestrians standing in the roadway.  Schedule I is thus geographically over-inclusive in that it prohibits begging at intersection locations where there is an "absence of evidence supporting the existence of a threat to public safety and traffic flow." *Cutting v. City of Portland,* 802 F.3d 79, 90 (1st Cir. 2015).

Here, there is no evidence supporting a claim that an advance Solicitor license requirement for solicitation is narrowly tailored to serve a significant government interest.  *Forsyth County,* 505 U.S. at 129.

The County could also more narrowly tailor any advance Solicitor licenses, for example, requiring advance licensing only for large groups to engage in mass solicitation.  Under Section 1209.090, the County could issue a content-neutral prohibition on *all* types of solicitation in the roadway at certain dangerous intersections.  Fernandez does not deny that standing in the roadway at certain dangerous intersections is a traffic hazard, and concedes that the County has an interest (under any standard of review) in content-neutral regulation to protect the lives of pedestrians and motorists alike.

But it is the County's burden to engage in other steps that are more reasonably tailored to any government interests that the County may assert such as safety or congestion, under either strict or intermediate scrutiny.  Finally, by regulating public places so comprehensively with the

advance Solicitor license requirement, the County is not leaving open ample alternatives for Fernandez—or other third parties dissimilarly situated—to solicit financial assistance.

Furthermore, the Eighth Circuit has been skeptical of facially content-neutral restrictions on speech that silence an unpopular speaker such as a homeless person like Fernandez. *Johnson v. Minneapolis Park & Rec. Bd.,* 729 F.3d 1094, 1098 (8th Cir. 2013); *see also KKK,* 775 F.3d at 979 (Loken, J. dissenting and citing *Johnson*).

> **iv.     The Vagrancy prohibitions in Sections 716.080 and 716.090 are patently, facially unconstitutional in that they are void for vagueness, overbroad, and violate equal protection**

The purpose of Fernandez's repeated citations and prosecutions is to deter him from engaging in the protected speech and expressive conduct of begging.  Each of the vagrancy prohibitions of Sections 716.080 and 716.090 is flagrantly and patently violative of express constitutional prohibitions.

Fernandez cannot reasonably expect to be convicted of Code violations that are patently and facially unconstitutional, or to have such a conviction affirmed on appeal.  Furthermore, Fernandez cannot conform his conduct to County law to the extent that the vagrancy prohibitions do not give fair notice of what conduct is proscribed, are void for vagueness, and invite arbitrary and capricious enforcement for the bad faith purpose of harassing a poor, unemployed, homeless person begging for financial assistance.  *See, e.g., Papachristou v. City of Jacksonville,* 405 U.S. 156, 162 (1972) ("This ordinance is void for vagueness, both in the sense that it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, and because it encourages arbitrary and erratic arrests and convictions." (internal quotations and citations omitted)); *Chicago v. Morales,* 527 U.S. 41, 54 (1999) ("Vagueness may invalidate a

criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement.")

The vagrancy prohibitions in the Code at Sections 706.080 and 706.090 as applied to Fernandez effectively criminalizes homelessness, invites arbitrary and capricious enforcement, and constitutes a status offense by criminalizing the identity of homelessness. The Missouri Supreme Court has invalidated similar vagrancy ordinances. *City of St. Louis v. Burton*, 478 S.W.2d 320 (Mo. 1972) (City of St. Louis vagrancy ordinance found unconstitutional under vagueness and overbreadth challenges).

Fernandez challenges the vagrancy ordinance both as applied to him, and on its face as the ordinance proscribes conduct by third parties dissimilar to Fernandez. For example, a man who marries an heiress to a great fortune, and proceeds to live a life of idle leisure, would presumably be a vagrant. *See* Section 716.090(5) ("Every able-bodied man who shall neglect or refuse to provide for the support of his family."); *Papachristou,* 405 U.S. at 163 ("Letting one's wife support him is an intra-family matter, and normally of no concern to the police."); *Hicks v. District of Columbia,* 383 U.S. 252, 257 (1966) ("That condition is not a failure to make a productive contribution to society, for the idle rich are not reached. The idle pauper is the target.")

The anti-vagrancy prohibition also thus fails equal protection by targeting men but not women, with no remedial purpose. *D.M. v. Minn. State High Sch. League*, No. 18-3077, at *8 (8th Cir. Mar. 6, 2019) ("In the context of gender-based discrimination, the U.S. Supreme Court has interpreted that clause to mean that unless a government actor can meet the 'demanding burden of showing an 'exceedingly persuasive' justification for treating males differently from females, the differential treatment is unconstitutional.").

Further, it is commonly known that many beggars and panhandlers have signs that state "disabled veteran" and similar language.  The vagrancy prohibition cannot apply to able-bodied persons such as Fernandez but not his disabled or veteran brethren.

> **v.**     **Third parties are also affected by the three challenged sections of the Code**

As stated above, Fernandez also brings facial challenges as to the effect of each of the three challenged sections insofar as they prohibit First Amendment-protected speech and conduct by third parties dissimilarly situated to Fernandez.

Fernandez begins with Chapter 804.  Some examples of its overbreadth for other third parties in a manner different than Fernandez:

(a)     Although Fernandez has been cited and prosecuted for a violation of Section 804.050, nevertheless if a third party was cited and convicted for a violation of Section 804.080 (refusing to leave a building or an improved lot), then that third party, engaging in speech and expressive conduct dissimilar to Fernandez, would permanently lose its ability to obtain the required Solicitor license.  *See* Section 804.130(a).

(b)     If Fernandez's Solicitor license was revoked, or that of a third party, then either Fernandez or that third party would lose the ability to apply for a Solicitor license for twelve months, regardless of the underlying speech or expressive conduct.  *See* Section 804.130(b).

(c)     Although "good moral character and reputation" is not defined by the Code, if Fernandez or a third party were found to lack such good moral character and reputation, then either Fernandez or that third party would permanently lose their

ability to obtain the required Solicitor license.  *See* Section 804.130(c).  There is, of course, no legal authority limiting First Amendment speech and expression rights only to those pre-screened by the government to possess "good moral character and reputation."  Rather, the worst of society still enjoys freedom of speech.  Thus the Code embargoes the speech of those third parties wishing to solicit funds but who may happen to be convicted murderers, rapists, thieves, and the like.  (It appears that corrupt political officials have the same right to solicit as honest ones, because politicians are exempted from the "good moral character and reputation" inquiry since they are independently regulated by RSMo. Chapter 130.)

(d)     If a third-party solicitor represents an organization or employer having four (4) or more of its representatives convicted of having violated the provisions of Chapter 804 during any twelve-month period, then that third-party solicitor would be unable to obtain a license.  See Section 804.130(d).

(e)     Chapter 804 burdens, and is a prior restraint upon, the ability of nonprofit charitable organizations to solicit funds in traditional public forums such as sidewalks, parks and plazas.

(f)     Chapter 804 burdens, and is a prior restraint upon, the ability of a 501(c)4 social welfare organization canvasser or solicitor, not otherwise required to register under Missouri Campaign Finance Disclosure Law, RSMo. Chapter 130, to solicit financial support for their social welfare mission, or election advocacy incidental to that mission.  For example, a hypothetical 501(c)4 organization called the Missouri Coalition of Dog Owners would need to register to solicit funds, whether for its own social welfare mission generally, or for work related to a ballot initiative

40

Case: 4:19-cv-01638-SNLJ   Doc. #: 3-1   Filed: 06/06/19   Page: 41 of 48 PageID #: 256

which particularly affected dog owners, as would the 501(c)4's canvassers or solicitors.

(g) Chapter 804 burdens, and is a prior restraint upon, the ability of day laborers, such as seasonal landscape workers, to solicit work for the day to feed their families.

(h) Chapter 804 burdens, and is a prior restraint upon, the ability of individuals who reside in other States to visit St. Louis County for a brief period of time and spontaneously engage in solicitation in a public place.

Fernandez suggests this list is underinclusive of potentially unconstitutional applications of the Solicitor license provisions of Chapter 804 to third parties dissimilar to Fernandez. Fernandez notes, however, that since the case law is different for commercial activity licensing of peddlers, then he is not bringing claims based on the commercial activities of third-party peddlers such as those who sell hot dogs from a cart.

Fernandez also facially challenges the pedestrian roadway solicitation provisions of Section 1209.090 as applied to third parties dissimilar to him, but nevertheless targeted for their speech, because their speech solicits a ride, a job, a donation to a third-party charity, or the doing of business with the occupant of a vehicle. Thus, a day laborer asking a motorist to hire him for a job—which Fernandez does not—would nevertheless stand afoul of the prohibition. Particularly, Section 1209.090 prohibits each of the prohibited activities based on the *content* of the speech rather than the *act* of soliciting.

Fernandez also facially challenges the vagrancy provisions of Sections 716.080 and 716.090 for the following reasons:

a. The vagrancy prohibitions of Sections 716.080 and 716.090 are status offenses that criminalize the statuses of being homeless, poor, and unemployed.

b.  Sections 716.080 and 716.090 do not give fair notice to a reasonable and careful person of what conduct is proscribed; are void for vagueness facially; and invite arbitrary and capricious enforcement by the police officer on his or her beat.

c.  Section 716.090(1) violates the associational rights of third parties of "every person without any visible means of support who may be found loitering around houses of ill-fame, gambling houses or places where liquor is sold or drunk."

d.  Sections 716.090(2) and (3), which target "every person who shall attend or operate any gambling device or apparatus" and who "shall be engaged in practicing any trick or device to procure money or other thing of value" respectively, do not distinguish between the lawful rights of third parties to own casinos and to gamble in those casinos to the extent permitted by Missouri state law, and conduct otherwise unlawful, and so this provision fails to the extent it conflicts with Missouri state law, and otherwise void for vagueness.

e.  Section 716.090(4), which targets "every person who shall be engaged in any unlawful calling," does not define what an "unlawful calling" is, does not give notice of what a "calling" is, is void for vagueness, and invites discriminatory enforcement in that Missouri statutes criminalize conduct but not the status of a calling.

f.  Section 716.090(5), which targets "every able-bodied man who shall neglect or refuse to provide for the support of his family," can be applied against third parties affected in a manner unlike Fernandez, for example, a man who marries a rich woman, who proceeds to live a life of idle leisure, and who does not support his wife financially—thus discriminating against poor persons but not rich persons.

42

g.   Section 716.090(5) also violates equal protection of the laws, as a woman cannot be prosecuted under the vagrancy prohibitions while a man can.

h.   Section 716.090(5) also violates equal protection of the laws, as a disabled man cannot be prosecuted under the vagrancy prohibitions while an able-bodied man can.

i.   Section 716.090(6), which targets "every person found tramping or wandering around from place to place without any visible means of support," does not define "tramping" or "wandering" or what makes means of support "visible" and therefore does not give notice, is void for vagueness, and invites discriminatory enforcement in that Missouri statutes criminalize conduct but not the status of a calling.

Notably, there are no Missouri state statutes substantially similar to each of the solicitation regulations and prohibitions of Chapter 804 and Section 1209.090, and the vagrancy prohibitions of Sections 716.080 and 716.090, nor has Fernandez been charged with any state law violations. *Cf. Snider v. City of Cape Girardeau,* 861 F. Supp. 2d 974, 981 (E.D. Mo. 2012*), aff'd* 752 F.3d 1149 (8th Cir. 2014) (holding City would be liable under *Monell* if plaintiff had been charged under facially unconstitutional flag-burning ordinance, rather than substantially similar (and also facially unconstitutional state statute).  Further, any municipal ordinances of incorporated cities, towns and villages within the County that prohibit roadway solicitation in a manner substantially similar to Section 1209.090 are inapposite because the record is of Fernandez's begging occurring only in unincorporated St. Louis County.  Fernandez has not been charged with violating any municipal ordinances of incorporated cities, towns and villages within the County that prohibit roadway solicitation in a manner substantially similar to Section 1209.090.

43

Neither Chapter 804 nor Section 1209.090 nor Sections 716.080 and 716.090 contain any severance or severability clause.

c.      **Fernandez will Suffer Irreparable Harm in the Absence of a Preliminary Injunction**

Fernandez will suffer irreparable harm if a preliminary injunction is not granted as to Chapter 804 and Section 1209.090's solicitation regulations because his First Amendment right to free speech and expressive conduct will be abridged by a content-based regulation and prior restraint. *Nixon,* 509 F.3d at 484-85. A party is entitled to equitable relief only if there is no adequate remedy at law. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381 (1992). The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality)*; Marcus v. Iowa Pub. Television,* 97 F.3d 1137, 1140-41 (8th Cir. 1996). There is no remedy at law which can adequately compensate Fernandez for the loss of his protected free speech rights. *Nat'l People's Action v. Village of Wilmette,* 914 F.2d 10008, 1013 (7th Cir. 1990).

Fernandez can also show irreparable harm from enforcement of the vagrancy prohibitions, because of the connection between his homelessness (targeted by the vagrancy citations) and his begging for financial assistance. *Powell v. Noble,* 798 F.3d 690, 703 (8th Cir. 2015) (A law's failure to provide fair notice of what constitutes a violation is a special concern where laws abut[ ] upon sensitive areas of basic First Amendment freedoms because it inhibit[s] the exercise of freedom of expression and inevitably lead[s] citizens to steer far wider of the unlawful zone ... than if the boundaries of the forbidden area were clearly marked.) (internal quotations and citations omitted).

The County's vagrancy prohibitions lack "reasonable specificity toward the conduct to be prohibited." *Coates v. City of Cincinnati,* 402 U.S. 611, 614 (1971); *Fair v. Nebraska Dept. of Social Services,* 111 F.3d 1408, 1415 (8th Cir. 1997) ("to survive a vagueness challenge, a statute must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and provide explicit standards for those who apply the statute.").

The Eighth Circuit has also held that preliminary injunctions may issue on the basis of equal protection challenges.  Admittedly this is more common in the educational sphere, but the Eighth Circuit has instructed district courts to enjoin government entities based on equal protection claims alone without considering other claims.  *D.M. v. Minn. State High Sch. League,* No. 18-3077, at *10 (8th Cir. Mar. 6, 2019) ("we conclude that the boys have a fair chance of prevailing on the merits of their equal protection claim"); *McFarlin v. Newport Sp. School Dist,* 980 F.2d 1208 (8th Cir. 1992)

### d.	The Balance between this Harm and the Injury that Granting the Preliminary Injunction Will Inflict on Other Interested Parties

The balance-of-harm and public-interest factors need not be taken into account where a plaintiff shows a likely violation of his or her First Amendment rights.  *Minnesota Citizens Concerned for Life, Inc. v. Swanson,* 692 F.3d 864, 870 (8th Cir. 2012), quoting *Phelps–Roper v. Troutman,* 662 F.3d 485, 488 (8th Cir.2011), *vacated on reh'g,* 705 F.3d 845 (8th Cir. 2012).  "The balance of equities … generally favors the constitutionally-protected freedom of expression." *Phelps-Roper v. Nixon,* 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Ropert v. City of Manchester, Mo.,* 697 F.3d 678 (8th Cir. 2012).

In any case, the balance of equities weighs heavily in favor of Fernandez. *Nixon,* 509 F.3d at 485.  In the absence of a preliminary injunction, enforcement of the challenged provisions of

Chapter 804 and Sections 716.080 and 716.090 will prevent Fernandez and other third parties—both those who engage in similar speech and those whose speech and conduct are markedly different in manner (the charity canvasser, the day laborer, the out-of-state visitor)—from exercising First Amendment rights to speech and expressive conduct to solicit.

Similarly, since the vagrancy prohibitions have been used to target Fernandez for his speech and expressive conduct, and abut such speech and expressive conduct, then the balance of the equities tilt in favor of Fernandez.

On the other hand, if the Court grants the preliminary injunction, the County will suffer no harm, because a government has no interest in enforcing an unconstitutional law.  Nor is there a significant hardship or cost to the County.  *Cf. Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.,* 997 F.2d 484, 489-90 (8th Cir. 1993).  Any interest the County has in promoting traffic safety or public order can be adequately and better addressed by the enforcement of existing County traffic safety ordinances and County ordinances targeting properly-defined conduct (e.g., public intoxication).  *Schaumburg,* 444 U.S. at 637.

     **e.**      **The Public Interest**

The grant of a preliminary injunction would serve the public interest.  It is obvious that upholding the Constitution and preventing the enforcement of unconstitutional ordinances serves the public interest.  *Nixon,* 509 F.3d at 485, citing *Connection Distrib. Co. v. Reno,* 154 F.3d 281, 288 (6th Cir. 1998) (quotation omitted).  "It is always in the public interest to protect constitutional rights."  *Nixon,* 509 F.3d at 689.  The public interest is served by preventing the likely unconstitutional enforcement of the challenged ordinance while this case is considered on the merits.  The public interest supports an injunction that is necessary to prevent a government entity

46

from violating the Constitution. *Doe v. South Iron R-1 School Dist.,* 453 F.Supp.2d 1093, 1103 (E.D.Mo. 2006).

## VIII.   Bond

Normally a bond or security is required when a preliminary injunction is to issue.  "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  F. R. Civ. P. 65(c).  This Rule, however, has long been interpreted to mean that a district court has discretion to grant injunctive relief without requiring bond or other security, especially when doing so would function to bar poor people from obtaining judicial redress.  *See, e.g., Doctor's Assocs., Inc. v. Stuart,* 85 F.3d 975, 985 (2d Cir. 1996); *Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624, 628 (5th Cir. 1996); *Miller v. Carlson,* 768 F. Supp. 1331 (N.D. Cal. 1991); *Brown v. Artery Org., Inc.,* 691 F. Supp. 1459, 1462 (D.D.C. 1987).

Here, Fernandez is homeless and lacks sufficient resources from which to provide security. Requiring a bond in this case would effectively function to bar Fernandez from obtaining injunctive relief.  Fernandez notes that The Honorable E. Richard Webber of this Court has waived the bond or security requirement in another case involving homeless persons in the City of St. Louis.  *Johnson v. Board of Police Com'rs,* 351 F. Supp. 2d 929, 952 (E.D. Mo. 2004).

If the court concludes that a bond is necessary, Fernandez has indicated he can pay a nominal amount in the range of $10.00.

## IX.   Conclusion and Prayer

WHEREFORE Plaintiff Robert Fernandez prays the Court preliminarily enjoin Defendant St. Louis County during the pendency of this litigation from enforcing St. Louis County Code of

Ordinances Chapter 804 against solicitors; from enforcing Code Section 1209.090 regarding roadway solicitation; and from enforcing Sections 716.080 and 716.090 regarding vagrancy, while this case is resolved on the merits.  Since Defendant cannot demonstrate harm from the issuance of a preliminary injunction, bond should be waived, or in the alternative, set at a nominal amount in the range of $10.00.

Respectfully submitted,

Co-Counsel for Plaintiff

/s/ Hugh A. Eastwood
Hugh A. Eastwood, 62058MO
Attorney at Law
7911 Forsyth Blvd., Ste. 300
St. Louis, MO 63105-3825
hugh@eastwoodlawstl.com
(314) 809 2343
(314) 863 5335 Fax

   /s/ W. Bevis Schock  .
W. Bevis Schock, 32551MO
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322