**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT FERNANDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:19-CV-01638-SNLJ |
| v. | ) | |
| | ) | |
| ST. LOUIS COUNTY, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

COMES NOW Defendant St. Louis County, Missouri, by and through undersigned counsel, and hereby files its Memorandum in support of Defendant's Motion For Judgment On The Pleadings, pursuant to Fed. R. Civ. P. 12(c), as follows:

## I. BACKGROUND

Plaintiff's initial request for preliminary injunction (Doc #3) was granted as to St. Louis County's Vagrancy Ordinance No. 3729 on October 10, 2019 (Doc#22). Since October 2019, police enforcement has completely halted in regards to the prohibited vagrancy ordinance, and the St. Louis County Council is debating whether to replace the nullified vagrancy ordinance, with a narrowly tailored law prohibiting aggressive panhandling. The only County laws remaining under scrutiny by this Court are contained in Chapter 804 of the Peddler and Solicitors Code, §§ 804.010 – 804.260, including

Schedule I[1], and Section 1209.090, Regulations For Pedestrians.[2] There are no material facts in issue, as both parties concede that the plaintiff is being cited for soliciting without a license at a Schedule I restricted intersection, and the pending controversy revolves solely around whether the Peddlers and Solicitors Code is constitutionally sound. Although Plaintiff may have been cited in the past for not staying on the side of the road when soliciting money, the vast majority of the citations received by plaintiff are "Solicitation without a License." The County Peddler and Solicitors Code sets out s licensing procedure which is applied to all individuals and groups soliciting the public. (See, Exhibit A, Affidavit of Jericka Johnson, filed and incorporated by reference herein).

Importantly, the constitutionality of Section 1209.090, has been definitively upheld by this Court (and by the 8th Circuit) in *Association of Community Organizations for Reform Now v. St. Louis County,* 726 F.Supp. 747 (E.D.Mo. 1989); *Association of Community Organizations for Reform Now v. St. Louis County,* 930 F.2d 591 (8th Cir. 1991). The decisions in those two cases, regarding Section 1209.090 of the County ordinances, are res judicata and Plaintiff is collaterally estopped from raising the constitutionality of that ordinance again in the present lawsuit. *Duffner v. City of St. Peters, Missouri,* 930 F.3d 973 (8th Cir. 2019).

## II. STANDARD FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) of the Federal Rules of Civil Procedure establishes that "[a]fter the

---

1 Document #1-2, filed 6/5/19, Pages 1-14.

2 Document #1-24, filed 6/5/19, Page 8, in relevant part: "1209.090 – Pedestrians Soliciting Rides or Business- 1. No person shall stand in a roadway for the purpose of soliciting a ride, employment, charitable contribution or business from the occupant of any vehicle."

pleadings are closed – but early enough not to delay a trial – a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Minch Family LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 965 (8th Cir. 2010). A motion for judgment on the pleadings under Fed. R. Civ. P.12(c) is governed by the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Hestdalen v. Corizon Corrections Healthcare*, 2020 WL 442610*1 (E.D.Mo. 2020).

## III. ARGUMENT

### A. The Peddler and Solicitors Code (Chapter 804) is a content-neutral manner restriction regulating activity not speech.

By their plain terms, the ordinances and Schedule of Restricted Intersections in Chapter 804, Peddler and Solicitors Code, do not distinguish favored speech from disfavored speech on the basis of the ideas or views expressed. These laws make no attempt to single out any topics of speech, such as labor, political or religious speech, but instead apply to speech on any topic. The ordinances, on their face, do not regulate what speech can occur, but where. The government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, they are narrowly tailored to serve a government interest, and they leave open ample alternative channels for communication of the information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791(1989).

The County's interest in ensuring pedestrian and motorist safety is unrelated to

content. The ordinances do not contain language that require more than, at most, cursory examination of the speech. The County's ordinance applies equally to used car salesmen, animal rights activists, fundraisers, environmentalists and missionaries. Further, the ordinance does not require law enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred. Whether individuals violate the Code depends not on what they say, but simply on when and where they say it.

The conduct of soliciting others for the immediate payment of money for personal use is neither discussion, nor advocacy nor the interchange of ideas on political, economic, religious or social issues, nor a form of artistic expression. A facially neutral law does not become content-based simply because it may disproportionately affect speech on certain topics. On the contrary, "a regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Josephine Havlak v. Village of Twin Oaks*, 864 F.3d 905, 914 (8th Cir. 2017). Similarly, in *Jobe v. City of Catlettsburg*, 409 F.3d 261 (6th Cir. 2005), the court determined that the ordinance prohibiting individuals from placing leaflets on vehicles parked on public streets did not unconstitutionally regulate a public forum. The court observed that under the public forum doctrine, with respect to a traditional public forum and a designated public forum, the government may not prohibit all communicative activity, but may enforce reasonable regulations of the time, place, and manner of expression that are content-neutral, are narrowly tailored to serve a significant

government interest, and leave open ample alternative channels of communications.[3]

Plaintiff incorrectly claims that the County's ordinances are content-based like the sign ordinance in *Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015). However, Gilbert restricted signs explicitly based upon content, such as whether the signs were "ideological," "political," or to promote a non-profit event. Id. at 2224-25, 2227. The County's ordinances do no such thing. Rather, the County ordinances apply equally to all messages, and are justified by the need to protect pedestrians and motorists in busy intersections.

Further, *Reed* did not address a regulation of conduct, nor does the text of the majority opinion suggest that it should apply to such regulations. In *Reed*, the Town of Gilbert's Sign Code distinguished between different types of signs on the basis of the language they contained. [4] The speech/conduct distinction was not at issue in *Reed*, and while the decision might be interpreted to reflect increasing skepticism from the Court over regulations of speech, it says nothing about extending the First Amendment to cover

---

3 The Court in *Jobe* concluded that the city ordinance prohibiting individuals from placing leaflets on vehicles was a reasonable time-place-and-manner regulation of speech because the law did not draw distinctions based on the topic of speech or the point of view of the speaker, the ordinance advanced two significant government interests, and left open ample alternative avenues for communication. Similarly, an ordinance prohibiting the picketing of any dwelling was held to be a permissible time, place, and manner restriction on speech in a traditional public forum of residential streets, and thus did not violate the First Amendment's free speech guarantee, in that it was content-neutral, was narrowly tailored to serve a substantial governmental interest, and left ample alternative channels of communication. *Veneklase v. City of Fargo*, 248 F.3d 738 (8th Cir. 2001); See also, *Thorburn v. Austin*, 231 F.3d 1114 (8th Cir. 2000)(a city ordinance prohibited residential picketing in the street within 50 feet of a targeted dwelling, but permitted such picketing on the sidewalk across the street from the dwelling was held to be content-neutral.)

4 Reed v. Town of Gilbert, 135 S.Ct. 2218, 2224-25 (2015)

regulation of *conduct.*

Notably, in the aftermath of *Reed*, lower courts have found regulations, such as those considered by this court, to be content-neutral requiring intermediate scrutiny. For example, in the Northern District of Illinois, an ordinance prohibiting peddling on public sidewalks adjacent to a stadium was deemed content neutral. *Left Field Media LLC. v. City of Chicago*, 137 F.Supp 3d. 1127 (N.D. Ill. 2015). The Supreme Court has repeatedly considered regulation of activities to be based on the manner in which expressive activity occurs, not its content, and held such regulation content neutral. *Snyder v. Phelps*, 562 U.S. 443, 456 (2011); *Hill v. Colorado*, 530 U.S. 703, 721 (2000).

**B. The designation of restricted intersections are content-neutral and necessary to control the number of solicitors at locations of high volume traffic.**

The County has designated particular intersections, with consistently high volume traffic, as locations where any one individual may only solicit three days out of the calendar year.[5] The remaining 362 days of the year, a licensed solicitor may solicit at any other County road or public place in unincorporated St. Louis County. Plaintiff admits that two intersections – namely, I-55 and Lindbergh, and Lindbergh and Rusty Road – are his preferred locations because of the volume of traffic. Plaintiff also asserts that other individuals soliciting financial assistance prefer the same intersections. If the number of people at those intersections were not regulated through the licensing process, the sheer number of solicitors in the most popular locations, would be an obvious threat to

[5] Ordinance No. 21507, §804.165 of the St. Louis County Revised Ordinances, Doc#1-2, Page 7.

motorists and to the solicitors themselves.

It is extremely disruptive to the unimpeded and safe flow of traffic to allow the unchecked proliferation of pedestrians at major traffic intersections. There is no indication to suggest even remotely that the County's interest in controlling solicitation arose because of any objection to a particularized idea or message. However, regardless of whether a solicitor holds a sign or simply stands by the roadway, there is an undeniable danger to personal safety, which stems from the conduct of solicitation at intersections such as I-55 and Lindbergh, where cars exit the interstate at high speeds.

Importantly, when the protected speech is intertwined with conduct, greater deference has been accorded government regulation of the conduct component, even though the regulation may infringe on the speech component. *United States v. Kokinda,* 497 U.S. 720 (1990)(upholding total ban on solicitation on United States Post Office sidewalk even as applied to the in-person solicitation of funds by a political organization); *Clark v. Community for Creative Non-Violence,* 468 U.S. 288 (1984)(sleeping outdoors on public park property properly banned even though it was part of a symbolic public protest of homelessness).

In the case of speech intertwined with conduct, as with solicitation for personal assistance, the "government regulation is sufficiently justified if it is within the constitutional power of the government, if it furthers an important or substantial government interest; if the government interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien,* 391

U.S. 367, 377 (1968)[6]. The Supreme Court has acknowledged that soliciting funds in person is an inherently more intrusive, intimidating and disruptive activity than is distributing literature, for example. *Kokinda* at 734. The Court has further found that "face-to-face solicitation presents risks of duress that are an appropriate target of regulation." *International Soc. For Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672 (1992). Importantly, the Eighth Circuit has held that while the government's interest in protecting an individual from unwanted speech may have "special force" in the context of an individual's home, ***it is not limited to residential settings***. *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 691 (8th Cir. 2012)(bold emphasis added).

Further, in *United States Labor Party v. Oremus*, 619 F.2d 683, 688 (7th Cir. 1980), the Court noted the "evident dangers of physical injury and traffic disruption that are present when individuals stand in the center of busy streets trying to engage drivers and solicit contributions from them." The analysis of this problem set forth in *Acorn v. City of Phoenix*, 798 F.2d 1260, 1269 (9th Cir. 1986), is relevant to the case at bar: "unlike oral advocacy of ideas, or even the distribution of literature, successful solicitation requires the individual to respond by searching for currency and passing it along to the solicitor. Even after the solicitor has departed, the driver must secure any change returned, replace a wallet or close a purse, and then return proper attention to the full responsibilities of a

[6] Courts use a test from *United States v. O'Brien* to analyze laws that primarily regulate conduct but also place burdens on speech: "A government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of the interest." 391 U.S. 367, 377 (1968).

motor vehicle driver." The direct personal solicitation distracts drivers from their primary duty to watch the traffic and potential hazards in the road, observe all traffic control signals or warnings, and prepare to move through the intersection.

### C. **The County ordinances are narrowly-tailored and leave open ample alternatives.**

In *McCullen v. Coakley*, 573 U.S. 464 (2014), the Court held that the government is afforded somewhat wider leeway to regulate features of speech unrelated to its content. "[E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.' " Id. at 477(citation omitted). The County's determination of the means most suited to safety purposes on County roads must be reviewed only to determine whether the means chosen are "substantially broader than necessary" to accomplish the governmental interests. *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989). The legislature's chosen method "need not be the least restrictive or the least intrusive means." Id at 798. It must simply be reasonable.[7]

Legislatures are often faced with a number of arguably effective means of

---

7 In *Ward*, the Court stated: "Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions. We have often noted that restrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.

accomplishing their policy goals, and are uniquely suited to choose among those means for the most effective implementation of their policy choices. The Supreme Court, therefore, has guarded against the substitution of a court's policy choice for the discretion of the legislature by consistently holding that the validity of time, place or manner regulations "does not turn on a judge's agreement with the responsible decision maker concerning the most appropriate method for promoting significant government interests." *Turner Broadcasting System, Inc. v. FCC*, 520 U.S. 180, 218 (1997), quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985).[8]

**D. <u>The First Amendment and not the Due Process Clause Govern the Constitutional Determinations in the case at bar.</u>**

Plaintiffs claim that the ordinance violates their due process rights, but the First Amendment is directly applicable and this Court should not rely on the more vague and amorphous due process clause. *Albright v. Oliver* 510 U.S. 266, 274 (1994)[9]. Plaintiff's due process arguments mirror their First Amendment vagueness and overbreadth claims. If a particular constitutional amendment provides specific protection for the right asserted, such as First Amendment free speech rights, the alleged violation will be

8 In the absence of a limiting construction by a state authority, the court must "presume any narrowing construction or practice to which the law is fairly susceptible." *City of Lakewood v. Plain Dealer Publishing*, 486 U.S. 750, 770 n. 11 (1988); *Davet v. City of Cleveland*, 456 F.3d 549, 554 (6th Cir. 2006)("Federal courts construe state statutes to avoid constitutional difficulty when fairly possible….")

9 "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the mere generalized notion of 'substantive due process,' must be the guide for analyzing these claims. *Albright v. Oliver*, 510 U.S. 266, 273 (1994).

analyzed under that amendment rather than under the more amorphous concepts of substantive due process. *County of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998). Plaintiffs do not claim that persons cited under the ordinances do not receive procedural due process through the County municipal court system.

Likewise, it is generally unnecessary to analyze laws which burden the exercise of First Amendment rights under the equal protection guarantee, because the substantive guarantees of the Amendment serve as the strongest protection against the limitation of those rights. *Hill v. City of Scranton,* 411 F.3d 118, 126 (3rd Cir. 2005); *Sherbert v. Verner*, 374 U.S. 398, 409 (1963).

**E. <u>There Is No Evidence of Discriminatory Enforcement of the County Ordinances.</u>**

Further, Plaintiff cannot establish a pattern of discriminatory enforcement by the County, evincing an intent to target particular viewpoints. Plaintiff generally alleges a pattern and practice of discriminatory enforcement, but only in vague terms with reference to no specific incidents. The facts are clear that Plaintiff had a license to stand at a designated restricted intersection three days of the year, but chose to disregard the law, and stand *whenever he chose*, at either I-55 and Lindbergh or Lindbergh and Rusty Road (both Schedule I Intersections.) Plaintiff's conclusory allegations of a pattern and practice cannot survive under *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009). As the Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) the pleading standard in

Rule 8 demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*,at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557.

It is uncontroverted that enforcement of the County ordinances have *not* fallen more heavily on those who advocate one viewpoint than on those who advocate another, nor has enforcement against Plaintiff occurred *because of* the viewpoint he expressed. Further, the standard of causation in a §1983 claim against a municipality, which requires a direct causal link between a municipal policy or custom and the alleged constitutional deprivation, is a rigorous standard of causation. *Ball-Bey v. Chandler,* 2019 WL 6015671*5 (2019). "A plaintiff cannot establish liability by only identifying conduct properly attributable to the municipality." Id. Instead, a plaintiff must show that the municipal action was taken with a requisite degree of culpability *and* must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *City of Canton v. Harris,* 489 U.S. 378, 404 (1989). The Supreme Court has set a high bar for establishing municipal liability under §1983. *Soltesz v. Rushmore Plaza Civic Ctr.,* 847 F.3d 941,947 (8th Cir. 2017).

Absent a showing that there was no probable cause for an arrest, a claim that an arrest was in retaliation for speech protected by the First Amendment fails. *Nieves v. Bartlett,* 139 S.Ct. 1715 (2019). Although Plaintiff cryptically asserts that he was maliciously prosecuted in retaliation for First Amendment activities, this is a misstatement of both fact and law. Plaintiff, mainly charged with solicitation without a license, is unable to plead or prove lack of probable cause, a necessary element of a malicious prosecution claim. Additionally, Plaintiff admits that approximately 54 charges were outright dismissed in the last year – dispositions for which the court and prosecutors have immunity, but which clearly do not reflect either maliciousness or a lack of probable cause.

## III. CONCLUSION

WHEREFORE, Defendant St. Louis County, Missouri respectfully requests the Court to enter judgment in their favor on Plaintiff's Complaint, and for such other and further relief as the Court may deem just and proper under the circumstances.

Respectfully Submitted,

**BETH ORWICK**
**COUNTY COUNSELOR**

/s/ Linda S. Levin_____________
Linda Suzann Levin #31569 MO
Associate County Counselor
Robert C. Moore #47553 MO
Associate County Counselor
Office of the County Counselor
St. Louis County Government Center
41 S. Central, Ninth Floor
Clayton, MO 63105
(314)615-7042 tel. (314)615-3732 fax
LLevin@stlouisco.com

*Attorneys for Defendant St. Louis County, Missouri.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2020 a true and accurate copy of the foregoing Memorandum In Support Of Motion For Judgment On The Pleadings was filed and served via the Court's electronic filing system upon all counsel of record.

/s/Linda S. Levin
Linda S. Levin