**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT FERNANDEZ,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **Case No. 4:19-cv-01638-SNLJ** |
| | **)** | |
| **ST. LOUIS COUNTY, MISSOURI,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant St. Louis County's motion for judgment on the pleadings (#33) and plaintiff's motion to exclude the affidavit of Jericka Johnson (#36). The County's motion is **DENIED** and plaintiff's motion is **GRANTED**.

As plaintiff puts it, "[t]his is a case about the First Amendment rights of a homeless beggar to solicit alms from motorists while standing on the sidewalk median of a County roadway." In a separate Order, this Court preliminarily enjoined the County from enforcing St. Louis County Code Sections 716.080 and 716.090 dealing with so-called "vagrants." However, the parties continue to dispute certain anti-solicitation provisions, including the solicitor license requirement (Section 804.050) and certain prohibitions against soliciting in public roadways (Section 1209.010.1). *See* St. Louis County Peddlers and Solicitors Code § 804.050 (2019); St. Louis County Traffic Code § 1209.090 (2019).

Those ordinances read:

> **804.050 - Solicitor's License Required.**
> —It shall be unlawful for any solicitor to engage in such business in St. Louis County, without first having obtained a license therefor from the Division.
>
> **1209.090 - Pedestrians Soliciting Rides or Business —**
> 1. No person shall stand in a roadway for the purpose of soliciting a ride, employment, charitable contribution or business from the occupant of any vehicle.
>
> 2. No person shall stand on or in proximity to a road for the purpose of soliciting the watching or guarding of any vehicle parked or about to be parked on a road.

As an initial matter, the Court will grant plaintiff's motion to exclude Jericka Johnson's affidavit. The essence of that motion is to challenge the County's filing of a supportive affidavit as part of its motion for judgment on the pleadings, which is not a "material necessarily embraced by the pleadings." That criticism is well-founded. Rule 12(d) notes that a motion for judgment on the pleadings "must be treated as one for summary judgment" where "matters outside the pleadings are presented to and not excluded by the court." FED. R. CIV. P. 12(d). An affidavit is not a pleading. *See Joe Hand Promotions, Inc. v. Shepard*, 2015 WL 1976342 at *2 (E.D. Mo. Apr. 30, 2015) (Limbaugh, J.); *Patterson v. ABS Consulting, Inc*., 2008 WL 5263784 at *1 (E.D. Mo. Dec. 18, 2008) (Sippel, J.); *see also* FED. R. CIV. P. 7(a) (defining "pleadings"). And, despite the County's suggestion otherwise, Johnson's affidavit was not "attached to [a] pleading"—it was attached to a motion. Nor is the affidavit automatically treated as a "public record" as would come within the limited exception that allows a court to consider "some materials that are part of the public record" without converting the

motion into one for summary judgment. *See Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (treating as a "public record" the underlying state court decisions made in the case). Ultimately, the Court need not decide whether the affidavit should be considered under this or any exception, though, because the affidavit does not materially aid the County's motion or this Court's consideration of it. In fact, the affidavit is cited only once in the County's supporting memorandum of law for the unremarkable proposition that "[t]he County Peddler and Solicitors Code sets out [the] licensing procedure which is applied to all individuals and groups soliciting the public." The Code speaks for itself on the proper scope of its mandates—an affidavit, whatever it proclaims, is simply immaterial in that respect.

That leaves the County's motion, which is governed under the same standards as a Rule 12(b)(6) motion. *See Ashley Cty., Ark. v. Pfizer, Inc*., 552 F.3d 659, 665 (8th Cir. 2009). "Judgement on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Id*.

The County's arguments focus heavily on *Ass'n of Cmty. Organizations for Reform Now ("ACORN") v. St. Louis Cty*., 726 F. Supp. 747 (E.D. Mo. 1989), *aff'd*, 930 F.2d 591 (8th Cir. 1991), in which, according to the County, Section 1209.090 was "definitively upheld by this Court and by the Eighth Circuit." Thus, the argument goes, *ACORN* is "*stare decisis* as to this particular ordinance" so that plaintiff's complaint "leaves no [factual] dispute" and instead "establish[es] defendant is entitled to judgment as a matter of law." Moreover, the County argues that, even outside of *ACORN*'s on-point analysis, the ordinances at issue are content-neutral (regulating ***where***, not ***what***,

speech can occur) and narrowly tailored (by being no more prohibitive than necessary and leaving open alternative channels for soliciting alms).

*ACORN* is, indeed, on-point. In that case, judgment was granted to the County over a First Amendment challenge to Section 1209.090. *See* 726 F.Supp. at 754. On appeal, the Eighth Circuit recognized the First Amendment right to solicit contributions, but called Section 1209.090 a "time, place, and manner restriction" that was "content neutral." 930 F.2d at 594. Thus, it applied an intermediate scrutiny standard to gauge the constitutionality of the County's ordinance. *Id*. (citing *Ward v. Rock Against Racism*); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) ("[A] regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but [] it need not be the least restrictive or least intrusive means of doing so."); *Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662 (describing Ward as applying an "intermediate level of scrutiny"). The Eighth Circuit explained that a time, place, and manner restriction is permissible if it is "justified without reference to the content of the regulated speech … [is] narrowly tailored to serve a significant government interest, and … leave[s] open ample alternative channels for communication of the information." *ACORN*, 930 F.2d at 594 (*quoting Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). It concluded that a "government interest in safety and traffic efficiency is 'significant.'" *Id*. It further concluded that the ordinance was narrowly tailored in that it addressed a "real, not speculative [danger]," as shown by the evidence of ACORN's own solicitors engaged in solicitation while cars were moving and while the light was green. *Id*. at 596. Because

intermediate scrutiny was applied, the County was not required to show that the least restrictive means was being used. *Id*. at 596-597; *see also McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (describing how, in regard to a time, place, and manner regulation, the "least restrictive alternative" standard is inapplicable, but the government must still "not burden substantially more speech than is necessary").

On the facts of this case, *ACORN* would, indeed, appear dispositive—this case deals with the same statute and the same basic factual concerns. That said, an appellate decision controls "unless an intervening Supreme Court decision has superseded it." *Gresham v. Swanson*, 866 F.3d 853, 855 (8th Cir. 2017).

Plaintiff says *Reed v. Town of Gilbert, Ariz.*, 135 S.Ct. 2218 (2015) does exactly that—it acts as intervening and superseding authority to *ACORN*. This is not the first time Eighth Circuit "content-neutral time, place, and manner" precedent has been challenged in light of *Reed*. *See Gresham*, 866 F.3d at 856 (evaluating the effects of *Reed* on TCPA-related content-neutrality precedent). And, in fact, at least one other judge of this Court has suggested *Reed*, indeed, acts as intervening authority on the issue of properly distinguishing between content-based and content-neutral laws. *See Traditionalist Am. Knights of the Ku Klux Klan v. City of Desloge, Missouri*, 2016 WL 705128 at *3 (E.D. Mo. Feb. 23, 2016) (Baker, J.) ("If the solicitation provisions of the City's ordinance were at issue, *Reed* would certainly constitute intervening authority").

In *Reed*, the Supreme Court made clear that a "crucial first step" in determining whether a law is content-based or content-neutral is to "determine[] whether the law is content neutral ***on its face***." *Reed*, 135 S.Ct. at 2228 (emphasis added). That means

evaluating a law on whether it "expressly draws distinctions based [on] communicative content" without regard to a government's benign motive, content-neutral justification, or lack of "animus towards the ideas contained in the regulated speech." *Id*. at 2227-2228. Thus, the Supreme Court disagreed that a municipal ordinance applying differing restrictions to sign usage based on their communicative purpose was "content neutral" simply because it "hinge[d] on whether and when an event [was] occurring." *Id*. at 2231. The Supreme Court explained "the fact that a distinction is event based does not render it content neutral," rather "[a]s we have explained, a speech regulation is content based if the law applies to particular speech because of the topic discussed or the idea or message expressed." *Id*. Distinguishing true event-based restrictions from content-based ones, the Supreme Court emphasized the ordinance "does not permit citizens to post signs on any topic whatsoever within a set period," but instead requires city officials to make a "content-based inquiry" to determine whether at-issue signs were political (treated unfavorably) or merely ideological (treated more favorably). *Id*.

One of the byproducts of *Reed* was the Supreme Court's invalidation of *Thayer v. City of Worcester*, 755 F.3d 60 (1st Cir. 2014), for "further consideration in light of Reed[.]" 135 S.Ct. 2887. In *Thayer*, the First Circuit called a city ordinance attempting to curb aggressive soliciting at traffic medians a "content-neutral" law because "the text of the ordinance does not identify or affect speech except by reference to the behavior, time, or location of its delivery." *Thayer v. City of Worcester*, 755 F.3d 60, 67 (1st Cir. 2014). But, upon the Supreme Court's remand, the district court found the same ordinance was, in fact, content-based "because it targets anyone seeking to engage in a specific type of

speech, i.e. solicitation of donations." *Thayer v. City of Worcester*, 144 F.Supp.3d 218, 233 n.2 (D. Mass. 2015).

A similar conclusion was reached by the Eighth Circuit recently. In *Rodgers v. Bryant*, the Eighth Circuit affirmed a district court's decision to grant a statewide preliminary injunction barring enforcement of Arkansas's anti-loitering law. 942 F.3d 451, 460 (8th Cir. 2019). That law, among other things, prohibited persons from lingering or remaining on a sidewalk, roadway, or public right-of-way "for the purpose of asking for anything as charity or a gift" in a "harassing or threatening manner" or "under circumstances that create a traffic hazard or impediment." Ark. Code Ann. § 5-71-213 (2017) (amended 2019). The law was treated by the Eighth Circuit as a "content-based restrictions" because it "regulates speech based on the topic discussed or the idea or message expressed." *Rodgers*, 942 F.3d at 456 (quoting *Reed*, 135 S.Ct. at 2227). The law applied "only to those asking for charity or gifts, not those who are, for example, soliciting votes, seeking signatures for a petition, or selling something." *Id*. Applying, then, the strict scrutiny test applicable to content-based laws, the Eighth Circuit found Arkansas's anti-loitering law was not narrowly tailored in that "other types of solicitation" are "equally dangerous" but left unrestricted—in other words, the law was underinclusive. *Id*. at 457.

It is helpful to compare *Thayer* and *Rodgers* to the Tenth Circuit's recent decision in *Evans v. Sandy City*, 944 F.3d 847 (10th Cir. 2019). In that case, a city ordinance made it illegal for ***any*** person "to sit or stand, in or on any unpaved median, or any median of less than 36 inches, for any period of time." *Id*. at 851. Recognizing the multiple post-

*Reed* challenges to solicitation and panhandling laws across the country, the opinion began: "an astute reader will recognize the ordinance challenge here is not a ban on panhandling or solicitation like many other ordinances. Instead, the ordinance is a restriction on sitting or standing on narrow and unpaved medians." *Id*. at 853. The application of the ordinance to all persons—having nothing to do with any particular form of speech—led the court to conclude it was content-neutral, *Id*. at 854, largely mirroring the distinctions drawn in *Reed*, 135 S.Ct. at 2231 (distinguishing sign ordinances that would uniformly apply to "any topic" in a particular time frame from those that required a specific "content-based inquiry" by law enforcement). The ordinance was also deemed narrowly tailored in that it applied "only to those medians where it is unsafe to sit or stand" as determined by a police-assisted survey. *Id*. at 858. The ordinance being carefully narrowed and targeted to the actual concerns of the city, it did not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id*. at 856.

All in all, *Reed*, and the Eighth Circuit's recent analysis in *Rodgers*, is at odds with the analytical approach taken in *ACORN*. In finding the County's ordinance to be content-neutral, *ACORN* seemed to suggest Section 1209.090 was not a ban on speech, but merely conduct, because there "is no ban on soliciting drivers—only on standing in the roadway to do it." 930 F.2d 594. *Reed* explains, however, that "the fact that a distinction is event based does not render it content neutral." 135 S.Ct. at 2231. Even supposing Section 1209.090 does hinge on ***where*** or ***how*** the solicitor is attempting to solicit, the fact remains that Section 1209.090 only prohibits a solicitor—and not any

other category of speaker—from remaining on the sidewalk and not in the roadway. *Compare Rodgers*, 942 F.3d at 454, 456 (noting the content-based ordinance "targets only a subset of [] speech," those seeking charity or gifts, in determining when someone is allowed to "linger or remain[] on a sidewalk, roadway, or public right-of-way"). A law enforcement officer would be hard-pressed *not* to make a "content-based inquiry" to those standing either on the sidewalk or in the roadway for determining the proper application of Section 1209.090's prohibitions. *Reed*, 135 S.Ct. at 2231. There is, in other words, no way to meaningfully enforce Section 1209.090 without confronting the speaker's purpose for being in a prohibited roadway. As such, Section 1209.090.1, which states that, "[n]o person shall stand in a roadway ***for the purpose of soliciting … charitable contributions or business***" is not content-neutral.

This conclusion is enough to deny the County's motion—it has not "clearly demonstrated" that it is "entitled to judgment as a matter of law." *Partridge v. City of Benton, Ark.*, 929 F.3d 562, 564 (8th Cir. 2019). This Court leaves for another day the question of whether Section 1209.090 can survive under the strict scrutiny analysis required in this case. Moreover, this Court need not address whether the so-called "solicitor's license" requirement under Section 804.050 is also constitutionally infirm. In that regard, the parties' briefing has not specifically distinguished (or tied together) licensure-related issues to the County's stated interest in keep trafficways safe and efficient.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to exclude the affidavit of Jericka Johnson (ECF #36) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant St. Louis County's motion for judgment on the pleadings (#33) is **DENIED**.

So ordered this 18th day of May 2020.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE