UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROBERT FERNANDEZ,                )
                                 )
            Plaintiff,           )
                                 )    Case No.  4:19-CV-01638-SNLJ
      v.                         )
                                 )
ST. LOUIS COUNTY, MISSOURI,      )
                                 )
            Defendant.           )

DEFENDANT'S SUPPLEMENTAL TRIAL BRIEF

COMES NOW Defendant St. Louis County, Missouri, by and through undersigned counsel,

and files its Supplemental Trial Brief, as ordered by the Court.

The Court issued an order on September 23, 2020 regarding the briefing and stipulated

facts of this case. (Doc. 65). The Court noted that the plain language of Section 1209.090

"appears to prohibit conduct separate and apart from that which the plaintiff says he was engaged

in, that is, soliciting from the safety of a median or sidewalk."  The Court has asked the parties to

provide additional briefing regarding Section 1209.090 and discuss how its scope pertains to

Fernandez' arguments that his constitutional rights have been violated for having used, instead,

the wide sidewalk median area to engage in solicitation." (Doc. 65).

Section 1209.090 of the St. Louis County Revised Ordinances provides:


1209.090 Pedestrians Soliciting Rides or Business –
1.  No person shall stand in a roadway for the purpose of soliciting a ride,
employment, charitable contribution or business from the occupant of any vehicle.
2.  No person shall stand on or in proximity to a road for the purpose of soliciting
the watching or guarding of any vehicle parked or about to be parked on a road.
Section 1209.090


The word roadway is defined in Section 1202.010.28 as:

> Roadway:  The portion of a road intended for use by the general traveling public, typically delineated by curbs, edge lines, or the edge of pavement.  Section 1202.010.28

The word sidewalk is defined in Section 1202.010.031 as:

> Sidewalk:  A paved area separate from the highway or roadway intended for use by pedestrians.  Section 1202.010.031.

In its order on Defendant's motion for judgment on the pleadings (Doc. 42), this Court analyzed Section 1209.090 and stated that *Reed v. Town of Gilbert, Ariz.*, 135 S.Ct. 2218 (2015) supersedes *ACORN v. St. Louis County*, 930 F.2d 591 (8th Cir. 1991), aff'd 930 F.2d 596 (8th Cir. 1991).  In *Reed,* 135 S. Ct. at 2218, the Supreme Court clarified the analysis to distinguish a content-based law and a content-neutral law.  "A government regulation of speech is content based if a law applies to a particular speech because of the topic discussed or the idea or message expressed."  *Id.* at 2227.  The Court further concluded that a statute's content-neutrality must be determined on its face before the government's justification for such a regulation is examined. *Id.* at 2228.   Comparing *Reed* to *ACORN*, this Court held that *Reed* supersedes the content-neutral, time place and manner analysis established in *ACORN* and that the first step to analyze whether a law is content-based or content-neutral is to "determine whether the law is content neutral on its face." *Reed*, 135 S.Ct. at 2228.  Applying *Reed* to Section 1209.090, this Court held that because the ordinance cannot be enforced without determining the speaker's purpose for being in a roadway, it was not content neutral.  Having determined that Section 1209.090 is not content neutral, this Court stated it must undergo strict scrutiny analysis.  Under strict scrutiny analysis, a challenged law will only survive if it is narrowly tailored to further a compelling government interest.  *Reed,* 135 S. Ct. at 2231.

The County asserts that Section 1209.090 serves a compelling interest because it promotes traffic safety by keeping solicitors off of the roadway which makes the roadway safer

for both pedestrians and vehicles.  The court in *ACORN* analyzed Section 1209.090 and recognized the safety issue created by persons who solicit in the streets. "[T]here can be no doubt from the evidence, as well as one's own common sense, that soliciting in the streets is inherently dangerous." *ACORN, 726 F.Supp. at*  753; See *United States Labor Party v. Oremus,* 619 F.2d 683, 688 (7th Cir. 1980) (discussing the "evident dangers of physical injury and traffic disruption that are present when individuals stand in the center of busy streets trying to engage drivers and solicit contributions from them."); *Acorn v. City of Phoenix,*798 F.2d 1260, 1269 (9th Cir. 1986) ("the direct personal solicitation from drivers distracts them from their primary duty to watch the traffic and potential hazards in the road, observe all traffic control signals or warnings, and prepare to move through the intersection."); *Int'l Soc'y for Krishna Consciousness v. City of Baton Rouge*, 668 F. Supp. 527, 530 (M.D. La. 1987) ("It requires neither towering intellect nor an expensive 'expert' study to conclude that mixing pedestrians and temporarily stopped motor vehicles in the same space at the same time is dangerous."); See e.g., *Schenck v. Pro-Choice Network of W.N.Y.,* 519 U.S. 357, 375, 117 S. Ct. 855, 137 L.Ed.2d (1997) (discussing "public safety and order" as a valid governmental interest).

In the Plaintiff's situation, soliciting donations includes a response from the occupant of a vehicle.  *Plaintiff depo. p. 65, ll. 5-11; p. 66, ll. 17-25; Exh. BB (plaintiff approached driver window of passing motorist and accepted money.); s*ee *United States Labor Party,* 619 F.2d at 688 (solicitors standing in the street who attempt to engage drivers into contributing).  The analysis of this problem is set forth in *Acorn,* 798 F.2d at 1269, and is relevant to the case at bar: "unlike oral advocacy of ideas, or even the distribution of literature, successful solicitation requires the individual to respond by searching for currency and passing it along to the solicitor. Even after the solicitor has departed, the driver must secure any change returned, replace a wallet

3

or close a purse, and then return proper attention to the full responsibilities of a motor vehicle driver." Direct personal solicitation distracts drivers from their primary duty to watch the traffic and potential hazards in the road, observe all traffic control signals or warnings, and prepare to move through the intersection. See *United States Labor Party*, 619 F.2d at 688 (discussing driver distraction when solicitors are in the road).

The parties disagree about how the Plaintiff solicits money from vehicles, specifically his presence in the roadway, rather than on a median, sidewalk or curb. This Court's Order states that Plaintiff confesses "that he may briefly step into the curbside or shoulder of the roadway when the light is red to complete his receipt of a donation." *Joint Stip. ¶17*; (Doc. 65). Indeed, the Plaintiff asserts that he solicits from the median at the intersection of I-55 and Lindbergh Blvd and that he steps into the road to receive donations, then returns to the median. *Joint Stip. ¶17.* The Defendant does not dispute that the Plaintiff sometimes stands in the median with his sign. *Joint Stip. ¶17.* The record is clear, however, that the Plaintiff enters the roadway to both collect and solicit donations. *Plaintiff depo. p. 65, ll. 8-16; Kriska aff. ¶¶8, 15; Exh. I (caller advised male was "walking in and out of traffic soliciting"); Joint Stip. ¶16, 17, 58.* The Plaintiff has been observed in the roadway holding his sign. *Kriska aff. ¶15; see Exh. AA, p. 3* (officer dispatched to intersection "for male staggering in traffic, holding a cardboard sign"). The Plaintiff leaves the median to solicit donations from vehicles in the roadway, not just to briefly receive donations. *See Exhs. DD and EE, p. 3 (Plaintiff observed standing on the exit ramp holding sign and Plaintiff observed on the exit ramp approaching vehicles when panhandling).*

The Plaintiff sometimes stands on the shoulder of the northbound I-55 off ramp. *See Exhs. FF, GG. p. 3 (Plaintiff observed standing on the shoulder of the roadway)* The Plaintiff

walks up and down the exit ramp and solicits from stopped vehicles.  *Kriska aff. ¶7; Exhs. HH,*

*II, KK, LL p. 3.*  At this location of the off ramp, there is no sidewalk.  *Exh. KK, p. 3 (Plaintiff*

*observed begging "as he walked down the ramp between the concrete median and the*

*roadway"); Plaintiff's Exh. 36.*  There are no painted crosswalks or crossing signals at the

intersection of I-55 and Lindbergh Blvd.  *Joint Stip. ¶57; Plaintiff's Exh. 36.*  The exit ramp onto

Lindbergh Blvd. has two traffic lanes.  *Joint Stip. ¶56; Plaintiff's Exh. 36.*  There is no raised

sidewalk on the exit ramp that connects to the median at the intersection.  *Plaintiff's Exh. 36;*

*Exh. G  p.3 (Plaintiff seen walking on exit ramp in a narrow area with concrete median).*  There

is ample evidence that the Plaintiff leaves the intersection's median, which is curbed, to solicit.

*Plaintiff's Exhs. 32, 33.*

Applying the definition of "roadway," the Plaintiff admits that he is sometimes in the

street when he is soliciting.  *Plaintiff depo. p. 65, ll. 8-16; Section 1202.010.28.*  Section

1209.090 prohibits solicitors in the roadway, regardless of how brief the solicitor is in the

roadway. When the Plaintiff leaves the median, he is outside the median's curb. See *Plaintiff's*

*Exhs. 32, 33.*  When he steps into the marked lanes of the roadway to solicit or receive a

donation, he is on the portion of the road designated for vehicles by a painted edge line.  *Plaintiff*

*depo. p. 65, ll. 8-16; Exh. I, p. 3 (caller advised male was "walking in and out of traffic*

*soliciting"); See Kriska aff. ¶15 (plaintiff seen in the second lane of traffic when soliciting).*

When the Plaintiff walks on the shoulder of the exit ramp, he is not on a raised sidewalk that is

separate from the roadway but is marked by a painted edge line.  *Section 1202.010.031;*

*Plaintiff's Exh. 36.*  Contrary to his statements, the description of the Plaintiff's soliciting shows

that he is not limiting his activity to the safety of the median. *Joint Stip ¶17; Exhs. I, AA, p. 3.*

The observations of the Plaintiff "in traffic" at the intersection places him in the roadway.  The

scope of 1209.090 includes persons who are in the roadway and there is evidence that the Plaintiff places himself within the scope of the ordinance by being in traffic lanes when he enters the roadway. *Plaintiff depo. p. 65, ll. 8-16; Exhs. I, AA p. 3; Kriska aff. ¶15.*

The Plaintiff is not on a sidewalk when he walks up and down the exit ramp to solicit stopped vehicles. *Plaintiff's Exh. 36.* The danger of pedestrians in traffic is obvious. The County ordinance, similar to the City ordinance which was upheld in *Traditionalist American Knights of the Klu Klux Klan v. City of Desloge, Mo,* 775 F.3d 969 (8th Cir. 2014), is narrowly tailored to the government's strong interest in promoting pedestrian safety in trafficked roadways . Further, The County ordinance applies uniformly to any individual standing or walking on a roadway, regardless of the individual's message or lack of message. When an ordinance is content-neutral, courts have recognized safety as a significant governmental interest that municipalities have the power to regulate. *Stahl v. City of St. Louis, Mo.*, 687 F.3d 1038, 1040 (8th Cir. 2012) ("The ordinance here concerns road safety, an area in which municipalities traditionally have power to regulate."); *See Frye v. Kansas City Mo. Police Dep't,* 375 F.3d 785, 791 (8th Cir.2004). This power extends to allow municipalities to prevent potential traffic obstructions before the situation actually causes an accident or other problem. *Id.* at 791 ("The fact that an accident had not occurred is irrelevant. The police officers were entitled to decide that the situation presented a danger before an accident occurred.")  The County ordinance applies uniformly to any individual standing or walking on a roadway for the purposes listed in Section 1209.090.  When an ordinance is content-neutral, courts have recognized safety as a significant governmental interest that municipalities have the power to regulate. *Stahl v. City of St. Louis, Mo.*, 687 F.3d 1038, 1040 (8th Cir. 2012) ("The ordinance here concerns road safety, an area in which municipalities traditionally have power to regulate.") The Defendant has

presented evidence that accidents involving motorists can occur due to driver distraction even when a solicitor does not enter the roadway. *Joint Stip. ¶¶65-67.*

The manner of how the Plaintiff conducts his soliciting includes walking in the roadway and walking up and down the shoulder of the exit ramp. *Exhs. I, AA, GG, HH, II, LL, p. 3* The Plaintiff's conduct brings him within the scope of Section 1209.090 because he is in the portion of road used by the general travelling public. Pedestrians in the roadway create a safety hazard. See *ACORN, 726 F. Supp. at* 753. Applying Section 1209.090 and its focus on roadways, there is no evidence to suggest that the County's interest in restricting solicitation in the roadway was born from any objection to a particularized message. Regardless of whether a solicitor holds a sign in the roadway or simply stands by the roadway, there is an undeniable danger to personal safety, which stems from the conduct of solicitation at high-volume and higher-speed intersections such as I-55 and Lindbergh Blvd. *Joint Stip. ¶¶ 30, 54-56.* Because the Plaintiff's manner of soliciting includes being in the roadway, Section 1209.090 applies to him and the Defendant's police officers had probable cause to cite him. *Exhs. AA, I , p. 3; Joint Stip ¶17.*

The Plaintiff does not allege that his citations or arrests by the Defendant were arbitrary, but objects to the numerous citations that he received after this complaint was filed and that Defendant was on notice of the ordinances' alleged constitutional defects. It is important to note that no citations or arrests occurred after the Court's order in May 2020, when it preliminarily declared that Section 1209.090 was content-based. The Defendant's police officers continued to enforce Section 1209.090 until this Court issued its preliminary opinion that the ordinance was content-based and was subject to strict scrutiny. The Defendant's police officers are permitted to rely on an ordinance until it is declared unconstitutional, something this Court has not yet done and, as a matter of law, should not do. "Police are charged to enforce laws until and unless they

are declared unconstitutional; the enactment of a law forecloses speculation by enforcement officers concerning its constitutionality, with the possible exception that any person of reasonable prudence would be bound to see its flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979).

Importantly, in the event this court considers the ordinance to regulate speech, when the protected speech is intertwined with conduct, greater deference has been accorded government regulation of the conduct component, even though the regulation may infringe on the speech component. *United States v. Kokinda,* 497 U.S. 720 (1990) (upholding total ban on solicitation on United States Post Office sidewalk even as applied to the in-person solicitation of funds by a political organization); *Clark v. Community for Creative Non-Violence,* 468 U.S. 288 (1984) (sleeping outdoors on public park property properly banned even though it was part of a symbolic public protest of homelessness).   In the case of speech intertwined with conduct, as with solicitation for donations, the "government regulation is sufficiently justified if it is within the constitutional power of the government, if it furthers an important or substantial government interest; if the government interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien,* 391 U.S. 367, 377 (1968)[1].

The Supreme Court has acknowledged that soliciting funds in person is an inherently more intrusive, intimidating and disruptive activity than is distributing literature, for example. *Kokinda* at 734. The Court has further found that "face-to-face solicitation presents risks of

---

[1] Courts use a test from *United States v. O'Brien* to analyze laws that primarily regulate conduct but also place burdens on speech: "A government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of the interest." 391 U.S. 367, 377 (1968).

duress that are an appropriate target of regulation." *Int'l Soc'y For Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672 (1992).  Importantly, the Eighth Circuit has held that while the government's interest in protecting an individual from unwanted speech may have "special force" in the context of an individual's home, it is not limited to residential settings. *Phelps-Roper v. City of Manchester,* 697 F.3d 678, 691 (8th Cir. 2012).  The government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, they are narrowly tailored to serve a government interest, and they leave open ample alternative channels for communication of the information. *Ward v. Rock Against Racism,* 491 U.S. 781, 791(1989).

The County's interest in ensuring pedestrian and motorist safety is unrelated to content. To succeed on a facial First Amendment challenge to constitutionality of ordinance, challengers would have to establish that no set of circumstances existed under which the ordinance would be valid, or that the ordinance lacked any plainly legitimate sweep. *Phelps-Roper v. City of Manchester, Mo.* 697 F.3d 678, 684 (8th Cir. 2012). The County ordinance does not contain language that requires more than, at most, cursory examination of the speech. Further, the ordinance does not require law enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred.  Whether individuals violate the ordinance depends not on what they say, but on when and where they say it.

The conduct of soliciting others for the immediate payment of money for personal use is neither discussion, nor advocacy nor the interchange of ideas on political, economic, religious or social issues, nor a form of artistic expression. A facially neutral law does not become content-based simply because it may disproportionately affect speech on certain topics.  On the contrary, "a regulation that serves purposes unrelated to the content of expression is deemed neutral, even

9

if it has an incidental effect on some speakers or messages but not others." *Josephine Havlak v. Village of Twin Oaks*, 864 F.3d 905, 914 (8th Cir. 2017). Similarly, in *Jobe v. City of Catlettsburg*, 409 F.3d 261 (6th Cir. 2005), the court determined that the ordinance prohibiting individuals from placing leaflets on vehicles parked on public streets did not unconstitutionally regulate a public forum. The court observed that under the public forum doctrine, with respect to a traditional public forum and a designated public forum, the government may not prohibit all communicative activity, but may enforce reasonable regulations of the time, place, and manner of expression that are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communications.

Plaintiff admits that two intersections – namely, I-55 and Lindbergh, and Lindbergh and Rusty Road – are his preferred locations because of the volume of traffic. *Joint Stip. ¶¶ 9, 51, 53.* There is evidence that other solicitors occupy that intersection in addition to the Plaintiff. *Joint Stip ¶¶52, 70.* The threat to public safety to solicitors who occupy a roadway or are even in a safe location next to a roadway and directly solicit drivers is evident due to the distraction to drivers that can result. *United States Labor Party,* 619 F.2d at 688 (7th Cir. 1980). "[S]uccessful solicitation requires the individual to respond by searching for currency and passing it along to the solicitor." *Acorn,* 798 F.2d at 1269. Direct personal solicitation distracts drivers from their duty to operate their vehicle in traffic and pay attention to traffic control signals. The presence of solicitors in the roadway increases the risk of accidents to both solicitors and drivers. The County has shown that it has a compelling interest in traffic safety by keeping solicitors off the roadway.

WHEREFORE, Defendant St. Louis County, Missouri respectfully requests the Court to enter judgment in its favor and against Plaintiff on the Plaintiff's Complaint, and for such other

and further relief as the Court may deem just and proper under the circumstances.

Respectfully Submitted,

BETH ORWICK
COUNTY COUNSELOR

/s/ Robert C. Moore
Robert C. Moore #47553 MO
Associate County Counselor
Office of the County Counselor
St. Louis County Government Center
41 S. Central, Ninth Floor
Clayton, MO 63105
(314) 615-7042 tel. (314) 615-3732 fax
rmoore@stlouisco.com
*Attorney for Defendant St. Louis County, Missouri*

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2020, a copy of the foregoing Supplemental Trial Brief was filed and served via the Court's electronic filing system upon all counsel of record.

/s/ Robert C. Moore
Robert C. Moore