**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT FERNANDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-01638-SNLJ |
| | ) | |
| ST. LOUIS COUNTY, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Robert Fernandez sues defendant St. Louis County, Missouri, for alleged violations of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and Missouri state law. *See* 42 U.S.C. § 1983; 28 U.S.C. § 1367(a). Defendant has repeatedly cited and arrested plaintiff for violating its solicitation and vagrancy ordinances by begging for money at busy County intersections. Plaintiff challenges three of these ordinances and seeks declaratory and injunctive relief and damages. The parties agreed to submit this case for decision to the Court on briefs and stipulated facts. *See* Fed. R. Civ. P. 39(a)(1). Having considered the parties' pleadings, trial briefs, exhibits, and stipulated facts, the Court makes the following findings of fact and conclusions of law. *See id.* at 52(a).

**FINDINGS OF FACT**

The parties stipulated to most of the relevant facts. Plaintiff describes himself as a poor, homeless, unemployed man who begs for money from motorists in St. Louis County to support himself and his companion. Since 2017, police have cited plaintiff 64 times and

1

arrested him four times for his solicitation activities.  Police have also given plaintiff warnings about his solicitation activity without citing or arresting him and told him to move along, which plaintiff has done.  Plaintiff challenges three ordinances under which he has been cited and arrested: (1) the solicitor licensing requirements of Chapter 804, the "Peddlers and Solicitors Code"; (2) section 1209.090.1, which prohibits standing in the roadway for certain solicitation purposes; and (3) sections 716.080 and 716.090, which define and prohibit vagrancy.

### 1.  Chapter 804 – Peddlers and Solicitors Code.

Plaintiff challenges the provisions of St. Louis County Code Chapter 804 that require a person to obtain a license before soliciting property or financial assistance in public and that restrict solicitation at certain designated intersections.  Defendant has cited plaintiff 31 times and arrested him four times for soliciting without a license and has held him pursuant to these arrests for a total of 28 hours and 26 minutes.[1]

Section 804.050 requires a "solicitor" to obtain a license before soliciting, reading: "It shall be unlawful for any solicitor to engage in such business in St. Louis County, without first having obtained a license therefor from the Division."  St. Louis County Peddlers and Solicitors Code § 804.050.  The chapter defines a "solicitor" as:

> *Solicitor*: Any individual:
> (a) traveling by foot, wagon, automobile, motor truck, or any type of conveyance from house to house, or place to place; or
> (b) positioned on or near street corners, public ways or places of public assembly or congregation; or

---

[1] Plaintiff's trial brief claims 29 hours and 2 minutes of seizures, which contradicts the parties' stipulation and plaintiff's exhibit.  *See* Pl.'s Ex. 42 [Doc. #56-42].  The Court's finding relies on the stipulation and record evidence.

(c) located in or near the roadway or right-of-way of a roadway for the purpose of:

    **(i) soliciting property or financial assistance of any kind;** or

    (ii) selling or offering for sale any article, tag service, emblem, publication or ticket; or

    (iii) taking or attempting to take orders for the sale of goods, wares, books, charts, maps, magazines, or other merchandise for future delivery, or for services to be furnished or performed then or in the future . . .

*Id.* § 804.030(4) (emphasis added).

To obtain a solicitor's license, applicants must pay a $13.00 license fee, complete notarized paperwork, attach photographs of themselves, and undergo a background check. Chapter 804 lists several reasons an application may be denied, including if the applicant lacks "good moral character and reputation." *See* St. Louis County Peddlers and Solicitors Code § 804.130(c). A solicitor's license expires after six months and cannot be renewed, requiring a person to repeat the process every six months. Chapter 804 does not set a timeline by which applications must be processed. In plaintiff's experience, defendant has typically taken between one to three weeks to process his applications.

In addition to the license requirement, section 804.165 limits soliciting at designated intersections to three days per year per person or organization. Section 804.165.1 reads: "It shall be unlawful for any individual to solicit, or to obtain authorization hereunder to solicit, on more than three days per calendar year at any intersection or combination of intersections designated in Schedule I of this code. All such solicitation shall occur between sunrise and sunset." *Id.* § 804.165.1. Section 804.165.3 requires any person who wants to solicit at a Schedule I intersection to present a valid solicitor license and file an

3

advance application to solicit on the requested dates.  *Id.* § 804.165.3.  This section also requires all individuals who solicit under its authority to "comply with all applicable County ordinances and traffic regulations."  *Id.* § 804.165.4.

Schedule I intersections are high-volume traffic intersections with higher speed limits designed to increase the movement of traffic.  Defendant claims section 804.165 serves to reduce the number of solicitors at busy intersections, which reduces the risk of accidents and promotes traffic safety.  Plaintiff prefers to solicit at the northbound exit for Interstate 55 at Lindbergh Boulevard, a Schedule I intersection, because he says he makes the most money there.  Plaintiff's financial needs require him to beg almost daily.  He claims that he makes less money at other locations and that the suburban nature of St. Louis County necessitates begging at intersections where lots of vehicles pass.

Plaintiff has applied for solicitor's licenses three times.  His first two applications were approved and have expired.  The third was pending when the parties submitted this matter.  As plaintiff's preferred place to beg is a Schedule I intersection, he also sought authorization to solicit at certain Schedule I intersections with one of his license applications.  He received approval to solicit at his preferred intersection on three days in 2019, the maximum number of days allowed per person in one calendar year.  Plaintiff admits he has solicited at Schedule I intersections on other days without authorization.

Plaintiff has not been convicted of any violations under these ordinances and thus has not been imprisoned or paid any fines.  In May 2019, a St. Louis County Counselor entered a *nolle prosequi* on the citations then pending against plaintiff.  Plaintiff continued to receive citations after he filed this lawsuit, with his last arrest occurring on August 22,

4

2019.  In December 2019, a County municipal judge dismissed all citations then pending against plaintiff following plaintiff's motion to dismiss.  Plaintiff claims he received notice of additional court dates for pending citations in July 2020, which caused him fear, and that these court dates were later cancelled, which put his mind more at ease.  Plaintiff fears he will continue to be cited and arrested for soliciting.

Plaintiff has an old shoulder injury that pre-dated the events of this lawsuit.  The parties stipulate that because of his handcuffing during an arrest on June 18, 2018, plaintiff's shoulder dislocated at the site of the old injury, requiring County police officers to take him to the hospital for treatment.  Defendant's exhibits show defendant arrested plaintiff on June 15, 2018, and that, after being detained in a holding cell, plaintiff complained of shoulder and chest pain, was transported to the hospital for treatment, and was deemed fit for confinement.  Plaintiff's exhibits include one set of medical records for a hospital visit on September 8, 2018, which is not on or around a date on which plaintiff was arrested. Those records indicate plaintiff dislocated his shoulder by slipping and falling on the concrete approximately 30 minutes before arriving at the hospital.

Defendant submitted evidence of two accidents involving solicitors at Schedule I intersections in the past three years.  In one, a child soliciting for a youth team stepped off a median, stumbled, and struck a vehicle's side mirror.  In the other, a driver rear ended another vehicle while trying to get money out to give to a solicitor by the exit lane.

A County police officer claims that vehicles on the exit ramp have moved over when plaintiff walked towards them and that his precinct receives three to four phone call complaints each day about plaintiff soliciting at I-55 and Lindbergh.  Defendant's Exhibit

5

A contains audio recordings of six such calls between August and November 2019.  These complaints include that plaintiff was "blocking up traffic, taking people's money"; that he is "always there" and "goes in and out of traffic when the light's red"; that the same "Mexican or black, whatever he is" beggar was there again; that it is "disturbing to live in St. Louis County . . . and have beggars at the damn intersection"; and that "it's bad enough I can't even take my kids, you know, to a baseball game in the city . . . because of all the homeless beggars . . . I'll be damned if they're going to start invading St. Louis County." Def.'s Ex. A [Doc. #59-1].

### 2.  Section 1209.090 – Pedestrians Soliciting Rides or Business.

Plaintiff challenges section 1209.090.1 of the St. Louis County Code, which reads: "No person shall stand in a roadway for the purpose of soliciting a ride, employment, charitable contribution or business from the occupant of any vehicle."  St. Louis County Traffic Code § 1209.090.1.  Defendant has cited plaintiff 14 times under this section.

Plaintiff begs by carrying a sign stating he is homeless and seeking help.  The parties agree plaintiff's practice is to stand on a sidewalk or median to beg from drivers.  Plaintiff claims he only approaches motorists if they indicate they will give him something.  Plaintiff maintains he is always careful of his own safety and motorist safety and does not "stand" in the roadway; he claims he only briefly enters the shoulder or curbside to receive donations from stopped motorists.  A County police officer claims he has seen plaintiff walking in the roadway to solicit and has seen him enter the second lane of traffic at I-55 and Lindbergh.  The parties agree that solicitors who enter traffic lanes when the light is green or changes to green can cause traffic to slow down or stop and are at risk of being

hit by moving vehicles.  County police officers claim solicitors create a safety hazard when they solicit in roadways and can cause driver distraction, which can lead to accidents.

**3. Sections 716.080 and 716.090 – Vagrancy.**

Plaintiff challenges sections 716.080 and 716.090 of the St. Louis County Code. Section 716.080 reads: "A person shall not be a vagrant."  St. Louis County Petty Offenses Code § 716.080.  Vagrancy is defined in section 716.090:

> The following classes of persons shall be deemed vagrant within the meaning of this chapter:
> (1)     Every person without any visible means of support who may be found loitering around houses of ill-fame, gambling houses or places where liquor is sold or drunk.
> (2)     Every person who shall attend or operate any gambling device or apparatus.
> (3)     Every person who shall be engaged in practicing any trick or device to procure money or other thing of value.
> (4)     Every person who shall be engaged in any unlawful calling.
> (5)     Every able-bodied man who shall neglect or refuse to provide for the support of his family.
> (6)     Every person found tramping or wandering around from place to place without any visible means of support.

*Id.* § 716.090.  Defendant has cited plaintiff eight times for vagrancy.  Early in this suit, defendant agreed to stop enforcing these sections, and the County Counselor asked the County Council to repeal or amend them.  The record does not show if this has happened.

## CONCLUSIONS OF LAW

**1. Exhibits and objections.**

The Court considered all the exhibits and affidavits submitted with the trial briefing. The parties stipulated to the admission of their exhibits without further foundation.  The

Court overrules the relevancy objections the parties included in their Stipulated Facts, including plaintiff's objection to a County police officer's testimony that "there have been occasions when vehicles on the exit ramp have moved over when Mr. Fernandez walked towards them" and defendant's objections to facts regarding the limitations of the municipal court's jurisdiction and the arguments plaintiff raised there.  *See* Stipulated Facts ¶¶ 68, 74-75 [Doc. #57].  The Court also overrules plaintiff's request to strike the following testimony by County police officers as undisclosed expert testimony: (1) "drivers who donate money to solicitors can be distracted and can cause accidents"; (2) "persons soliciting in roadways create a safety hazard to themselves and to drivers"; and (3) "limiting the number of solicitors at designated Schedule I intersections promotes public safety because it can reduce the risk of accidents to solicitors and vehicles."  *See id.* ¶¶ 62-64.  The Court will only give this testimony such weight as it may be due.

### 2. Plaintiff's claims.

Plaintiff has standing for his claims, which defendant does not dispute.  *See Frost v. Sioux City*, 920 F.3d 1158, 1162 (8th Cir. 2019).  Plaintiff brings six claims.  Counts I-III seek declaratory and injunctive relief under 42 U.S.C. § 1983.  "Section 1983 provides that '[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.'"  *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389 (8th Cir. 2007) (en banc) (quoting 42 U.S.C. § 1983).  A local governing body "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as

8

here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

Counts I and II allege the solicitor licensing requirements of Chapter 804 and the roadway solicitation prohibition in section 1209.090 violate the free speech clause of the First Amendment.  Count III alleges the vagrancy prohibitions in sections 716.080 and 716.090 violate the due process and equal protection clauses of the Fourteenth Amendment.  Plaintiff alleges all three laws are unconstitutional facially and as applied to him.  *See Citizens United v. Fed. Election Com'n*, 558 U.S. 310, 331 (2010) (explaining the distinction between as-applied and facial challenges "goes to the breadth of the remedy employed by the Court").  He asks the Court to declare the ordinances unconstitutional and issue a permanent injunction prohibiting their enforcement.

In Counts IV and V, plaintiff seeks compensatory damages under section 1983.  In Count IV, plaintiff claims his arrests under the solicitor license ordinance were unreasonable seizures within the meaning of the Fourth Amendment for which defendant is responsible because the ordinance is the County's law.  In Count V, plaintiff claims his arrests were seizures that constituted harassment for exercising his First Amendment rights; that such seizures would objectively chill a person of ordinary firmness from exercising their First Amendment rights; and that plaintiff fears future seizures for exercising his rights.  Finally, Count VI is a malicious prosecution claim for compensatory damages under Missouri state law.  Plaintiff alleges the three ordinances were clearly unconstitutional and,

as such, defendant acted maliciously in prosecuting him under them.  Plaintiff also seeks to recover his attorneys' fees and costs.  *See* 42 U.S.C. § 1988.

### 3.  The challenged portions of the solicitor license ordinance in Chapter 804 are unconstitutional (Count I).

Plaintiff challenges the solicitor licensing requirements in Chapter 804, arguing they are content-based speech restrictions that are not narrowly tailored to further a compelling government interest.  The Court first notes the limits of this challenge.  Plaintiff does not challenge the provisions of Chapter 804 regulating peddlers.  He does not solicit on behalf of a nonprofit, sell anything, or take orders for goods.  Plaintiff addresses only the requirements to obtain a license before "soliciting property or financial assistance of any kind" in the County and the provision limiting solicitation at Schedule I intersections.  *See* St. Louis County Peddlers and Solicitors Code §§ 804.030(4), 804.050, 804.165.

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'"  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting U.S. Const., Amdt. 1).  "[A]sking for charity or gifts, whether 'on the street or door to door,' is protected First Amendment speech."  *Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019) (quoting *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980)).  Protected speech may be regulated if the government "can establish a good enough reason and a fit between the claimed reason and the chosen means of regulation."  *Id*.  "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve

10

compelling state interests." *Reed*, 576 U.S. at 163.   "[A]lthough a duly enacted statute normally carries with it a presumption of constitutionality, when a regulation allegedly infringes on the exercise of first amendment rights, the statute's proponent bears the burden of establishing the statute's constitutionality."  *Ass'n of Cmty. Orgs. for Reform Now v. City of Frontenac*, 714 F.2d 813, 817 (8th Cir. 1983).

Section 804.050's solicitor license requirement and section 804.165's restriction on solicitation at certain major intersections are content-based restrictions on their face because they regulate speech based on "the topic discussed or the idea or message expressed."  *Reed*, 576 U.S. at 163.  Whether a person needs a solicitor license or is restricted from speaking at Schedule I intersections depends wholly on the communicative content of their speech.  *See id.* at 164.  These restrictions apply only to those asking for "property or financial assistance" or selling or taking orders for certain items.[2]  They do not apply when people are, for example, advocating for a political cause, soliciting votes, or seeking petition signatures.   The solicitor license requirements are content-based restrictions on speech.  *See id*. at 163; *Rodgers*, 942 F.3d at 456; *see also, e.g.*, *Thayer v. City of Worcester*, 144 F.Supp.3d 218, 233 (D. Mass. 2015) (explaining "a protracted discussion of this issue is not warranted as substantially all of the Courts which have addressed similar laws since *Reed* have found them to be content based"); *Working Am., Inc. v. City of Bloomington*, 142 F.Supp.3d 823, 831 (D. Minn. 2015) (concluding a solicitor license requirement was content-based under *Reed*).

---

[2] Section 804.165's limit on solicitation at Schedule I intersections also applies to solicitation campaigns by organizations.

11

Content-based restrictions on speech "can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171 (internal quotations omitted). "[W]hether or not a regulation is narrowly tailored is evidenced by factors of relatedness between the regulation and the stated governmental interest." *Republican Party of Minn. v. White*, 416 F.3d 738, 751 (8th Cir. 2005) (en banc). "A narrowly tailored regulation is one that actually advances the state's interest (is necessary), does not sweep too broadly (is not overinclusive), does not leave significant influences bearing on the interest unregulated (is not underinclusive), and could be replaced by no other regulation that could advance the interest as well with less infringement of speech (is the least-restrictive alternative)." *Id.*

Defendant argues its solicitor license requirements serve its compelling interest in public safety, particularly traffic safety, because: solicitors begging at intersections have increased in the County; the County has received increased motorist complaints about solicitors, especially plaintiff, in recent years; plaintiff sometimes walks into the road to receive donations or has been seen walking down the side of the exit ramp and entering the second lane of traffic; vehicles have moved away as plaintiff walks toward them; two accidents involving solicitation have happened at Schedule I intersections; solicitors who enter traffic when it is moving can be struck by a vehicle or cause traffic to slow down or stop; and, solicitation causes driver distraction. Defendant claims that the restriction on solicitation at Schedule I intersections promotes traffic safety because it limits the number of solicitors at any given intersection on a given day, which reduces the risk of accidents.

"[M]unicipalities traditionally have power to regulate" road safety, including to "prevent potential traffic obstructions before they actually cause an accident or other problem." *Stahl v. City of St. Louis*, 687 F.3d 1038, 1040 (8th Cir. 2012). But even if defendant's traffic safety interest is compelling, *but see Neighborhood Enterprs., Inc. v. City of St. Louis*, 644 F.3d 728, 738 (8th Cir. 2011), it still must show its content-based restrictions on speech are narrowly tailored to further that interest. *See id.* Plaintiff argues that the solicitor license requirements are not narrowly tailored because defendant has not shown the license requirement furthers its asserted interests and because the restrictions are underinclusive. The Court agrees.

First, defendant fails to show the solicitor license requirement in section 804.050 advances its interest in public safety, particularly traffic safety. "Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). To survive strict scrutiny, defendant must show "'a direct causal link between the restriction imposed and the injury to be prevented.'" *281 Care Comm. v. Arneson*, 766 F.3d 774, 787 (8th Cir. 2014) (quoting *United States v. Alvarez*, 567 U.S. 709, 725 (2012) (plurality)). Defendant does not explain the connection between requiring a person to get a license to ask for money in public and traffic safety. It appears to agree that requiring individuals to obtain a license before soliciting at other public locations away from busy intersections does not relate to traffic safety. *See* Def.'s Tr. Br. at 6 [Doc. #58] (arguing "[t]his is a situation where a hazard exists on roads, as compared to panhandlers soliciting on the sidewalks of a business district"). Defendant states its background check

13

requirement serves public safety "by identifying who is soliciting and requiring solicitors to undergo a background check." *Id*. at 12. It provides no explanation or support for this conclusion; its bare assertion that the two are connected is not sufficient to meet its burden. *See Horina v. City of Granite City*, 538 F.3d 624, 633-34 (7th Cir. 2008) (explaining that though a "panoply" of evidence is not needed, the government must "proffer *something* showing that the restriction actually serves a government interest"). Defendant does not explain the connection between the solicitor license requirement and its asserted interests.

Second, the restrictions are underinclusive because defendant has not given clear reasons for singling out solicitation from all other speech to promote traffic safety. "Where a regulation restricts a medium of speech in the name of a particular interest but leaves unfettered other modes of expression that implicate the same interest, the regulation's underinclusiveness may 'diminish the credibility of the government's rationale for restricting speech in the first place.'" *Johnson v. Minneapolis Park and Recreation Bd.*, 729 F.3d 1094, 1100 (8th Cir. 2013) (quoting *City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994)). "While the Supreme Court has held that 'a legislature may deal with one part of a problem without addressing all of it,' that rule 'has less force when a classification turns on the subject matter of expression.'" *Rodgers*, 942 F.3d at 457 (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 215 (1975)). "Thus, a 'regulation cannot discriminate on the basis of content unless there are clear reasons for the distinction.'" *Id.*; *see also Traditionalist Am. Knights v. City of Desloge*, 775 F.3d 969, 979 (8th Cir. 2014).

Defendant does not give clear reasons for its content-based regulations. It claims solicitation at intersections has recently increased, though it provides little detail and does

14

not explain what this has to do with its decision to implement these restrictions decades ago.  A solicitor who enters moving traffic could disrupt traffic or could be struck by a vehicle; but, so could any person who enters moving traffic for any reason.  Soliciting money can cause driver distraction; but, so can many other forms of roadside expression, such as protesting, soliciting signature petitions, campaigning, or evangelizing.  *Cf. Rodgers*, 942 F.3d at 457 (finding a charitable solicitation ban underinclusive where it did not ban other types of "equally dangerous" solicitation activity).  That motorists choose to call and complain about beggars does not justify restricting the beggars' speech.  *Cf. Stahl*, 687 F.3d at 1041.  On this record, defendant has not shown why solicitation is distinct from other modes of expression that implicate its traffic safety interest, meaning its content-based restrictions are underinclusive.

Defendant briefly mentions severability.  Under Missouri law, "[t]he provisions of every statute are severable."  *See* § 1.140 RSMo; *see also Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996) (per curiam).  A court must "sever unconstitutional provisions of statutes and give effect to the remaining statutory text 'unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one,'" or if the valid provisions cannot be executed consistent with legislative intent without the invalid provisions.  *Phelps-Roper v. Koster*, 713 F.3d 942, 953 (8th Cir. 2013) (quoting § 1.140 RSMo); *see also City of St. Peters v. Roeder*, 466 S.W.3d 538, 547 (Mo. banc 2015).

Section 804.165 is severable.  Earlier versions of Chapter 804 did not include this section.  *See* St. Louis County Ord. No. 6201 (1972), Pl.'s Ex. 2 [Doc. #56-2].  Severing this section does not make the rest of the chapter inoperable in regulating peddlers, sales of goods and services, or nonprofit solicitation—provisions plaintiff has not challenged. The inclusion of "soliciting property or financial assistance of any kind" in the definition of "solicitor" in section 804.030(4) is also severable, for the same reasons.  The Court will sever and declare void: (1) the language "soliciting property or financial assistance of any kind" in section 804.030(4), and (2) all of section 804.165.

**4. Section 1209.090.1 is unconstitutional under *Reed v. Gilbert* (Count II).**

Plaintiff also challenges St. Louis County Code section 1209.090.1, which prohibits standing in the roadway for certain solicitation purposes, as a content-based restriction not narrowly tailored to further a compelling government interest.  As this Court already detailed in its order denying defendant's motion for judgment on the pleadings, section 1209.090.1 is content based on its face because its application depends on the message the speaker is conveying.  *See Fernandez v. St. Louis Cnty.*, 461 F.Supp.3d 894, 897-99 (E.D. Mo. 2020).  The Court incorporates its prior analysis here.  Defendant continues to dispute section 1209.090.1 is content based, arguing it applies "uniformly to any individual standing or walking on a roadway, regardless of the individual's message or lack of message."  Def.'s Supp. Tr. Br. at 6 (Doc #68).  The plain language of the section shows otherwise.  The section applies only to people who stand in the roadway to solicit four specific things: a ride, employment, charitable contributions, or business.  A person cannot

16

stand in a roadway to solicit charity; they can stand in a roadway to solicit a signature or a compliment.  Strict scrutiny applies.  *See Reed*, 576 U.S. at 163.

Defendant again relies on its interest in traffic safety, arguing that keeping solicitors out of the roadway protects both pedestrians and drivers.  Again, even if traffic safety is a compelling interest, the section is not narrowly tailored because its singling out of speech on just these four topics is underinclusive.  *See Reed*, 576 U.S. at 171-72.

Defendant argues it singles out solicitation for a few reasons.  First, it suggests solicitation is different from other speech in the extent to which it distracts drivers.  It offers little support for this proposition and provides no basis to conclude that a person standing in a roadway asking for cash is more distracting than one standing in a roadway to, for example, solicit petition signatures, display a shocking photo, or ask for directions.

Second, defendant argues solicitation uniquely requires a response from motorists, as it requires willing drivers to "respond by searching for currency and passing it along to the solicitor" and then secure their belongings again before returning full attention to driving.  *See ACORN v. City of Phoenix*, 798 F.2d 1260, 1269 (9th Cir. 1986) (overruled by *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936 (9th Cir. 2011)).  Even if this argument were persuasive, section 1209.090.1 does not just prohibit standing in the roadway to ask for cash; it also prohibits doing so to ask for a ride, employment, or business, none of which require searching for currency.  This justification "raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring" unpopular speech, *i.e.*, begging.  *See Johnson*, 729 F.3d at 1100 (quotation marks omitted).

17

Finally, defendant argues that soliciting funds is inherently intrusive and disruptive and presents risks of duress that make it appropriate to regulate.  Defendant does not support these propositions; the cases it relies on are not relevant, as they involved factually different situations where the government acted as a proprietor in nonpublic fora and only had to show their restrictions were reasonable—an expressly different standard than what applies here in the regulation of speech in a public forum.  *See, e.g.*, *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992).

Defendant's decision to restrict only standing in the roadway to speak on these few topics "cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited." *Reed*, 576 U.S. at 172 (quotation marks omitted). In *Reed*, the Court explained a "clear and firm rule governing content neutrality is an essential means of protecting the freedom of speech, even if laws that might seem 'entirely reasonable' will sometimes be 'struck down because of their content-based nature.'" *Id.* at 171 (quoting *Gilleo*, 512 U.S. at 60).  The Court does not doubt defendant can lawfully restrict pedestrians from standing in roadways in the interest of public safety.  It just cannot do so in a content-based way without a "good enough reason and a fit between the claimed reason and the chosen means of regulation." *Rodgers*, 942 F.3d at 456.  Defendant has not met this burden.  Section 1209.090.1 is unconstitutional.

Section 1209.090.1 is severable from the Traffic Code.  The chapter contains many other sections regulating traffic that are not challenged and that can operate without section 1209.090.1.  The Court will sever and declare void section 1209.090.1.

18

**5. Sections 716.080 and 716.090, prohibitions on vagrancy, are unconstitutional (Count III).**

Plaintiff also challenges County Code sections 716.080 and 716.090, which prohibit vagrancy. These types of vagrancy laws are "plainly unconstitutional" violations of due process because they do not give fair notice of what is prohibited and because they lend themselves to arbitrary enforcement. *See, e.g.*, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 168-71 (1972). Defendant does not argue otherwise. The parties agreed to a preliminary injunction enjoining enforcement of these sections. Defendant indicated it intends to repeal or replace these sections, but the record does not reflect whether this is done. Sections 716.080 and 716.090 are severable from Chapter 716. The Court will sever and declare void sections 716.080 and 716.090.

**6. Plaintiff is entitled to permanent injunctive relief against enforcement of the unconstitutional ordinances.**

Plaintiff also seeks permanent injunctive relief barring enforcement of the ordinances. Where, as here, the plaintiff succeeds on the merits, a court "then considers the following factors in deciding whether to grant a permanent injunction: (1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest." *Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008). After considering these factors, the Court concludes permanent injunctive relief is appropriate on all three ordinances.

First, plaintiff has shown irreparable harm. "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

19

*Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 762 (8th Cir. 2008) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Plaintiff has been cited and arrested for engaging in protected speech many times, including during the pendency of this suit. Without a permanent injunction barring enforcement of the ordinances, plaintiff's constitutional rights and those of others in the County would continue to be infringed.

Second, the balance of harms supports a permanent injunction. Defendant has not argued it will suffer irreparable harm. As the protection of plaintiff's constitutional rights outweighs defendant's interest in regulating public safety through constitutionally infirm ordinances, the balance supports a permanent injunction.

Finally, a permanent injunction of all three ordinances is in the public interest. The public has a compelling interest in protecting First Amendment rights. *See Make Liberty Win v. Ziegler*, -- F.Supp.3d --, 2020 WL 6493429 at *7 (W.D. Mo. Nov. 4, 2020). The "'public has no interest in enforcing an unconstitutional ordinance.'" *Id.* (quoting *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006)). Permanent injunctive relief is appropriate.

### 7. **Plaintiff's damages claims (Counts IV, V, and VI).**

Plaintiff also brings three damages claims, arguing his arrests under Chapter 804 violated his Fourth and First Amendment rights (Counts IV and V) and his prosecutions under the ordinances were malicious prosecution under Missouri state law (Count VI). Plaintiff requests a "floor" of $150,000 in damages for injuries he claims were caused by his arrests and prosecutions. Defendant argues that sovereign immunity applies and that plaintiff's arrests were supported by probable cause.

20

Plaintiff's malicious prosecution claim is a Missouri tort claim that is barred by sovereign immunity unless plaintiff shows some statutory or common law exception that waives sovereign immunity. *See Blakeney v. City of Pine Lawn*, 2020 WL 4569175 at *3 (E.D. Mo. Aug. 7, 2020) (slip copy); *Stockley v. Joyce*, 2019 WL 630049 at *27 (E.D. Mo. Feb. 14, 2019) (unreported).  "'Sovereign immunity is not an affirmative defense but is part of the plaintiff's *prima facie* case.'"  *Id*. (quoting *Newsome v. Kansas City, Mo. Sch. Dist.*, 520 S.W.3d 769, 776 (Mo. banc 2017)).  Plaintiff has not pled or shown any exception that might waive sovereign immunity, which he must do.  *See Blakeney*, 2020 WL 4569175 at *4; *Hazlett v. City of Pine Lawn*, 2013 WL 4482864 at *2 (E.D. Mo. Aug. 19, 2013) (unreported).  The Court will enter judgment for defendant on Count VI.

Sovereign immunity does not apply to plaintiff's damages claims under section 1983.  *See Smith v. Copeland*, 892 F. Supp. 1218, 1225 (E.D. Mo. 1995).  In Count IV, plaintiff alleges his arrests under Chapter 804 were unreasonable seizures that violated his Fourth Amendment rights.  In Count V, he alleges his arrests constituted harassment for exercising his First Amendment rights and that such harassment caused him fear of future seizures for exercising his First Amendment rights.

"The essential elements of a § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right."  *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009).  The parties agree that defendant acted under color of state law at all relevant times.  Defendant points out that in cases involving a policy or ordinance that violates federal law, "'[t]o establish a constitutional violation, no evidence is needed other

than a statement of the municipal policy and its exercise.'" Def.'s Tr. Br. at 19 [Doc. #58] (quoting *Szabla*, 486 F.3d at 390). County police officers repeatedly arrested and detained plaintiff for engaging in protected First Amendment speech, pursuant to an unconstitutional ordinance defendant implemented and enforced. Plaintiff can recover compensatory damages for injuries resulting from his arrests. *Cf. Owen v. City of Independence*, 445 U.S. 622, 650-57 (1980); *Fields v. City of Omaha*, 810 F.2d 830, 834 (8th Cir. 1987); *Clary v. City of Cape Girardeau*, 165 F.Supp.3d 808, 830 (E.D. Mo. 2016). "The basic purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (cleaned up). Compensatory damages may include such damages as out-of-pocket loss, monetary harm, harm to reputation, humiliation, mental anguish, and suffering. *Id*. at 307.

Plaintiff requests a "floor" of $150,000 in damages. Defendant does not contest this amount, only stating that "although the plaintiff was not able to solicit while detained, there is no evidence that the plaintiff was otherwise harmed." Def.'s Tr. Br. at 19 [Doc. #58]. Defendant recognizes that plaintiff seeks damages for his loss of liberty caused by his arrests. The parties agree defendant arrested plaintiff four times and jailed him for about 28 ½ hours. Those arrests were for exercising his First Amendment rights, pursuant to an ordinance this Court has found unconstitutional. Plaintiff claims that handcuffing during one arrest dislocated his shoulder; while his hospital records do not support this claim, the parties stipulated that handcuffing during an arrest caused this injury, requiring hospital treatment. Plaintiff also claims the arrests and detentions caused him emotional distress, which the Court finds credible. Plaintiff proved his arrests and detentions harmed him.

*Cf., e.g.*, *Lowry*, 540 F.3d at 762.  As defendant offers no other opposition to the amount of damages plaintiff requested, the Court finds the amount uncontested.  Based on the evidence plaintiff presented, the parties' stipulated facts, and defendant's lack of opposition to the amount requested, the Court concludes an award of $150,000 fairly compensates plaintiff for injuries caused by his arrests, in violation of his First Amendment rights.

The Court agrees with defendant that plaintiff has not proved additional damages from any past "chill" on his protected speech.  Plaintiff has not established "he was deterred from some specific, intended act of expression" or that he refrained from soliciting because of his arrests.  *See Abbott v. Pastides*, 900 F.3d 160, 169-171 (4th Cir. 2018); *see also* Pl.'s Depo. at 72 [Doc. #59-4] (testifying that though police "scared [him] away" from his preferred spot, he continued going back regularly and would continue to do so); Pl.'s Aff. ¶ 26 [Doc. #56-37] (plaintiff explaining that though his Schedule I solicitation authorizations had long since expired, "I continue to solicit at my preferred location at I-55 and S. Lindbergh Blvd. without authorization on an almost daily basis").

Plaintiff also provides no authority supporting his claim that defendant violated his Fourth Amendment rights.  And, as he presents the case, any damages under this theory would duplicate those awarded for violation of his First Amendment rights.  As defendant points to case law at least arguably supporting the conclusion that plaintiff's Fourth Amendment rights were not violated, *see Michigan v. DeFillippo*, 443 U.S. 31, 37-38 (1979), and plaintiff provides no support whatsoever for his theory, the Court will enter judgment for defendant on Count IV.

8.  **Attorneys' fees and costs.**

In a section 1983 case, the Court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).  "[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quotation marks omitted).  A plaintiff is a prevailing party under § 1988 if he succeeds on any significant issue in the case.  *See Farrar v. Hobby*, 506 U.S. 103, 109 (1992).

Courts consider a number of factors in determining a reasonable attorney's fee, including: the time and labor required to litigate the case; the novelty and difficulty of the questions involved; the skill required to perform the services properly; customary fees; the results obtained; and awards in similar cases.  *See McDonald v. Armontrout*, 860 F.2d 1456, 1459 and n.4 (8th Cir. 1988).  "The proper method for determining a reasonable attorney's fee is to multiply the number of hours reasonably expended on the litigation times a reasonable hourly rate.  The resulting product [i.e., 'lodestar'] is presumed to be the reasonable fee to which counsel is entitled."  *Id.* at 1458 (cleaned up).

Plaintiff proved all three ordinances he challenged are unconstitutional and received the injunctive and declaratory relief he sought and damages.  Plaintiff achieved an excellent result and is clearly the prevailing party.  The questions in this case were complex and challenging and required considerable time, labor, and skill to litigate.  Plaintiff's attorneys provided detailed support for their fee request, including invoices supporting the hours of work they claimed—107.4 hours for Mr. Schock and 161.6 hours for Mr. Eastwood—and

affidavits supporting their requested hourly rates—$575 for Mr. Schock and $475 for Mr. Eastwood.  They do not request any lodestar enhancement.

Defendant does not contest the reasonableness of plaintiff's requested hourly rates or hours submitted, only stating the Court should award a lesser amount depending on plaintiff's ultimate success.  Given plaintiff's overall success in the case, the Court will not reduce the award on that basis.  *See Hensley*, 461 U.S. at 435.  Because defendant does not contest the reasonableness of the fee request, and based on the support plaintiff provided and the Court's experience and knowledge of prevailing rates in this market, the Court finds the requested hourly rates and hours claimed reasonable.  *See Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005); *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991).  The Court will grant plaintiff's request for $138,515 in attorneys' fees.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, and DECREED** that judgment will be entered in plaintiff Robert Fernandez's favor on Counts I, II, III, and V of plaintiff's complaint [Doc. #1].

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that judgment will be entered in defendant St. Louis County's favor on Counts IV and VI of plaintiff's complaint [Doc. #1].

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the following provisions will be severed from the St. Louis County Peddlers and Solicitors Code, Chapter 804, and defendant is prohibited from enforcing them:

(1) the prohibition on "soliciting property or financial assistance of any kind" without a license, as contained in sections 804.030(4)(c)(i) and 804.050; and

(2) section 804.165, Restriction of Solicitation at Designated Intersections.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that section 1209.090.1 will be severed from the St. Louis County Traffic Code, Chapter 1209, and defendant is prohibited from enforcing section 1209.090.1.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that sections 716.080 and 716.090 will be severed from the St. Louis County Petty Offenses Code, Chapter 716, and defendant is prohibited from enforcing sections 716.080 and 716.090.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that plaintiff is entitled to damages from defendant in the amount of $150,000.00.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that plaintiff is entitled to attorneys' fees and costs from defendant under 42 U.S.C. § 1988 in the amount of $138,515.00.

A separate judgment will issue.

Dated this 11th day of May, 2021.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE